IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

UNITED STATES OF AMERICA                        PLAINTIFF/RESPONDENT

V.                              Criminal No. 08-50015

JOSEPH MICHAEL RECTOR                        DEFENDANT/MOVANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Currently before the undersigned is Defendant's pro se Amended 28 U.S.C. § 2255 motion.  (Doc. 75.)  The Government has filed a Response (Doc. 80) and the Defendant has filed a Reply (Doc. 86).  The undersigned, being well and sufficiently advised, finds and recommends as follows with respect thereto:

### BACKGROUND

1.      The procedural history of this case is thoroughly set out in the Eighth Circuit's decision affirming the Defendant's conviction on direct appeal, see United States v. Rector, 598 F.3d 468 (8th Cir. 2010), and will be summarized below.

2.      On March 5, 2008, a six-count indictment was issued charging the Defendant with possessing, distributing, and receiving child pornography, in violation of 18 U.S.C. § 2252(a)(2) and (a)(4)(B).  A jury trial on the charges was scheduled for April 21, 2008, before United States District Judge Jimm Larry Hendren .

3.      On April 10, 2008, Defendant's retained attorney, Jeff H. Watson, filed a motion for continuance, seeking additional time for a forensic expert to examine the computer containing the images charged in the indictment.   Judge Hendren granted the motion and rescheduled the trial for May 27, 2008.  Prior to the May 27th trial date, the government

disclosed to defense counsel that Defendant potentially faced charges in the Western District of Oklahoma similar to the charges pending in Arkansas.  In light of the enhanced penalty provision for a defendant with a prior conviction of this type, defense counsel informed the government that Defendant wished to resolve all potential criminal charges in one negotiated plea agreement.  Defense counsel made an oral motion requesting a continuance to allow the Oklahoma charges to be transferred to this district for consolidation in one prosecution, pursuant to Federal Rule of Criminal Procedure 20.  Id. at 469.  Judge Hendren granted the motion and rescheduled the trial for June 30, 2008.

      4.     On May 23, 2008, an information was filed in the Western District of Oklahoma, charging the Defendant with producing child pornography, in violation of 18 U.S.C. § 2251(a).  On June 25, 2008, a consent to transfer the case to this district for plea and sentencing was filed in the Western District of Oklahoma.  On June 26, 2008, Judge Hendren was notified that the parties had reached a negotiated plea and that they would be submitting a written plea agreement to the Court.  Judge Hendren, therefore, cancelled the jury trial scheduled for June 30th, and set a change-of-plea hearing for July 23, 2008.  On July 2, 2008, the information from the Western District of Oklahoma and the consent to transfer was filed in this district as case number 5:08-CR-50056.  Judge Hendren received the written plea agreement on July 3, 2008.  The agreement, signed by Defendant and his counsel, Mr. Watson, on June 20, 2008, called for the dismissal of the indictment in this district in exchange for Defendant pleading guilty to the information transferred from the Western

District of Oklahoma.  (Doc. 91.)[1]

5.      At the change-of-plea hearing on July 23, 2008, Defendant informed the Court that he wished to terminate Watson as his retained attorney and hire Thomas Barton Smith. Defendant advised the Court that, although he had signed the plea agreement, "I don't think I should have signed it, Your Honor."  Id. at 470.  Judge Hendren allowed Defendant to terminate Watson as his counsel, and Defendant did not enter a guilty plea that day.  As Smith was not admitted to practice in this district, Judge Hendren directed him to gain such admission within ten days.  On August 4, 2008, Judge Hendren conducted a telephone conference and learned that Smith was still not yet admitted to practice in this district.  That same day, Judge Hendren entered an order to continue the trial to August 25, 2008.

6.      On August 12, 2008, Smith entered his appearance as Defendant's attorney of record.  On August 19, 2008, Smith filed on behalf of Defendant a motion to dismiss the indictment on speedy trial grounds.  Judge Hendren denied the motion.  Id. at 471.  Thereafter, Smith notified the Court that the parties had entered into a written plea agreement,[2] and a change-of-plea hearing was scheduled for August 25, 2008.   At this hearing, Defendant indicated that he did not want to go forward with the plea agreement and stated that he wished to discharge Smith as his attorney.  Defendant explained that he did not believe Smith was qualified to represent him, as he did not have experience and practice with federal rules and federal law.  Judge Hendren permitted Defendant to fire Smith but required Smith to remain

---

[1]     In an order dated September 13, 2012, the undersigned noted that it did not appear that the June 20, 2008 plea agreement was made a part of the record in this case.  Accordingly, the undersigned directed the Government to file a copy of this plea agreement as an exhibit to their response to Defendant's § 2255 motion.  (Doc. 90.)  The Government did so on September 14, 2012.  (Doc. 91.)

[2]     This agreement was not made a part of the record.

as standby counsel.  Judge Hendren scheduled the jury trial for August 27, 2008.

At the second failed plea hearing on August 25, 2008, the Government made a verbal motion on the record to transfer the information in Case No. 08-50056 back to the Western District of Oklahoma.  On August 28, 2008, Judge Hendren granted this motion.  (Doc. 3 in Case No. 08-50056.)

7.      On August 28, 2008, the morning of trial on the charges in this district, Defendant stated that he and Smith had "differences" and that he believed Smith had provided ineffective assistance of counsel.  Defendant explained, "The differences are the motions that I think should be made and ... just the fact that he thinks I should take the plea agreement." (Tr. at 63.)  Judge Hendren noted that the motions were untimely, but, nevertheless permitted Defendant to make the motions he wished to make – motions to dismiss and consolidate certain charges, a motion in limine, and another motion to dismiss on speedy trial grounds - on the record.  Judge Hendren granted the motion in limine but denied the remaining motions and directed that Smith remain as standby counsel.

After ruling on these pretrial matters, with Defendant proceeding pro se, Judge Hendren then called up the matter for voir dire of the jury panel.  When Judge Hendren inquired as to whether Defendant was ready to proceed, Smith stated that Defendant wished to reinstate Smith as his attorney and wished to make a motion for a bench trial.  Judge Hendren engaged in a lengthy colloquy with the Defendant outside of the jury's presence to ensure that these were Defendant's wishes.  Defendant executed a written waiver of his right to a jury trial (Doc. 30),  and stated that he did, in fact, wish to re-employ Smith.  Judge Hendren then excused the jury and the matter proceeded to a bench trial, with Smith acting

as Defendant's counsel.  The Government called seven witnesses and introduced 72 exhibits.

Defendant offered no evidence.  Judge Hendren found Defendant guilty on all six counts of

the indictment.

8.      On January 9, 2009, a sentencing hearing was held.  Pursuant to the statutorily

authorized maximum sentence, the advisory Guideline range was 1320 months imprisonment

– 240 months on each of Counts 2 through 5 and 120 months on Count 1.  Judge Hendren

sentenced Defendant to 1320 months imprisonment.

## DISCUSSION

9.      In the 28 U.S.C. § 2255 motion now before the Court (Doc. 75), Defendant

raises twenty-six grounds for relief.  For the reasons stated below, the undersigned finds that

Defendant's motion may be denied without an evidentiary hearing, as "the motion and the

files and the records of the case conclusively show that [Defendant] is entitled to no relief."

28 U.S.C. § 2255(b); Noe v. United States, 601 F.3d 784, 792 (8th Cir. 2010).

### Grounds One,  Two and Three;

10.     Defendant asserts that Watson and  Smith were ineffective in  failing to advise

him to request an evidentiary hearing and a "veracity hearing" to challenge the search warrant

and affidavit, probable cause, and all the evidence seized pursuant to the search warrant.

Ineffective assistance of counsel claims require a defendant to show that his counsel's

performance "fell below an objective standard of reasonableness" and that he was prejudiced

by this deficiency.  See Strickland v. Washington, 466 U.S. 668, 687-88 (1984).  A court may

first examine the prejudice from the alleged deficiencies before examining the deficiencies

themselves.  See id. at 697; United States v. Luke, 686 F.3d 600, 604 (8th Cir. 2012).  To

establish prejudice, a defendant must demonstrate a reasonable probability that the result of the proceeding would have been different, but for counsel's alleged deficiency.  See Strickland, 466 U.S. at 694; Luke, 686 F.3d at 604.  There is a "strong presumption that counsel's conduct falls within the wide range of professionally reasonable assistance." Strickland, 466 U.S. at 689.  Evaluating the alleged deficiency, a court should not allow hindsight to affect its analysis of whether counsel acted reasonably.  See Luke, 686 F.3d at 604.  When a defendant claims that counsel was ineffective by failing to litigate a Fourth Amendment challenge to a search and seizure, the defendant must prove that the claim is meritorious.  See id. at 605.

   11. Defendant asserts that counsel should have challenged the search warrant on the following grounds:

   * The warrant was "over-broad and completely lacking in particularity."

   * The warrant was based on information that was stale.

   * The informant was unproven and unreliable and the affidavit supporting the warrant omitted information about the informant to "bolster [his] believability."

(Doc. 75 at pgs. 4, 5, 7, 14-21.)  The undersigned will address each of these asserted grounds in turn.

   12. **Particularity of Warrant::**

Defendant argues that the search warrant was over-broad, as the Government's informant "claims to have seen only an Apple laptop and an external harddrive ... two (2) items," but the warrant authorized  "over one hundred (100) items to be seized and us[ed] the

word "any" and the phrase "any and all" at least seven (7) times."  (Doc. 75 at p. 14; Doc. 86 at p. 8).  Attachment B to the search warrant described the list of items to be searched for and seized from Defendant's residence, attached/detached storage facilities, vehicles on the property, as well as Defendant's person.  It authorized the search and seizure of "any computers, associated storage devices and other devices ... that can be used to store information and/or connect to the Internet, for records and materials evidencing a violation of Title 18 U.S.C. § 2252, which involves the possession of child pornography, as more specifically identified below."  (Doc. 10-1 at pg. 3.)  The Attachment then detailed eleven paragraphs of items to be searched and seized, which included "any and all" types of media; computer related equipment, software and documentation; and records evidencing occupancy and ownership of the premises and ownership or use of computer related equipment.  (Id. at pgs. 3-5).  The receipt for property seized indicates that the items seized were of the type described in the attachment – computers, hard-drives, VHS tapes, DVDs, CDs, film, a camera, a video recorder, thumb drives and floppy disks, etc.  (Doc. 10-2 at pgs. 3-4).

        "To satisfy the particularity requirement of the Fourth Amendment, the warrant must be sufficiently definite to enable the searching officers to identify the property authorized to be seized."  United States v. Horn, 187 F.3d 781, 788 (8th Cir. 1999), cert. denied 529 U.S. 1029 (2000).  "The particularity requirement 'is a standard of practical accuracy rather than a hypertechnical one.'... '[W]hether a warrant fails the particularity requirement cannot be decided in a vacuum.  The court will base its determination on such factors as the purpose for which the warrant was issued, the nature of the items to which it is directed, and the total circumstances surrounding the case.'"  United States v. Fiorito, 640 F.3d 338, 346 (8th Cir.

2011), cert. denied 132 S.Ct. 1713 (2012) (internal citations omitted);  United States v. Hager,

No. 12-2074, 2013 WL 1274564, *4 (8th Cir., Mar. 29, 2013)..

　　　In United States v. Summage, 481 F.3d 1075 (8th Cir. 2006) cert. denied 128 S.Ct. 875

(2008), a defendant charged with possession and production of child pornography challenged

the search warrant as being over-broad and lacking in particularity.  The warrant authorized

the search and seizure of all video tapes and DVDs, pornographic pictures, video and digital

recording devices and equipment, all equipment used to develop, upload or download

photographs and movies, computers and any indicia of occupancy.  The Eighth Circuit found

that the particularity requirement was satisfied, holding:

> As a practical matter, it is frequently difficult, and often times more
> intrusive to an individual's privacy, to perform an on-site review of certain
> items.  United States v. Hill, 459 F.3d 966, 974-75 (9th Cir. 2006) (recognizing
> that an on-site search of a computer "could take many hours and perhaps days"
> and "would not only impose a significant and unjustified burden on police
> resources, it would also make the search more intrusive");  United States v.
> Upham, 168 F.3d 532, 535 (1st Cir. 1999) ("As a practical matter, the seizure
> and subsequent off-premises search of the computer and all available disks
> was about the narrowest definable search and seizure reasonably likely to
> obtain the images.");  Horn, 187 F.3d at 788 (concluding that the officers could
> not practically view all the videos at the search site).  An off-site analysis of
> the relevant materials is therefore often necessary.
>
> Because no indication was given regarding the nature of the format in
> which the sought-for video and photographs were created or stored, it was
> necessary to search a broad array of items for the relevant materials, the on-
> site search of which could take a significant amount of time.  Given these
> circumstances and the practical concerns associated therewith, we conclude
> that the warrant was neither over-broad nor lacking in particularity.

Summage, 481 F.3d at 1079-80.

　　　In United States v. Gleich, 397 F.3d 608 (8th Cir. 2005), the search warrant identified

the computer files and items to be searched as those that could contain any form of visual

representation of sexual conduct by a minor, as defined by statute.  The Eighth Circuit found that the warrants in question satisfied the particularity requirement because the warrants sufficiently limited the search to the items specifically prohibited by statute.  The Eighth Circuit rejected Defendant's argument that the warrant only authorized the search and seizure of one computer and not the three computers actually searched and seized, finding that the warrant "plainly authorized the search and seizure of anything within his home which could contain evidence of the conduct prohibited by statute."  Id. at 611-12.

In the present case, the warrant was specifically limited to items that could contain evidence of a violation of 18 U.S.C. § 2252, involving the possession of child pornography.  As in Gleich, the items authorized to be seized were items that could have contained evidence of the violation § 2252.  Further, as in Summage, given that evidence of a violation of § 2252 could be in any sort of media,  format, or record, seizure of the array of items listed in the warrant was justified.  Accordingly, the undersigned sees no merit to Defendant's argument that the warrant was over-broad.  Defendant's ineffective assistance of counsel claim based on counsel's failure to raise this argument, therefore, fails.

13.   **Staleness of Warrant:**

Defendant argues that the affidavit supporting the search warrant "contained information that was stale due to the fact that the informant had been in jail for over nine (9) months."  (Doc. 75 at p. 14).   In the affidavit, dated February 5, 2008, Federal Bureau of Investigation Special Agent Scott Ledford stated that he met with an individual identified as "Source" on January 24, 2008.  Agent Ledford stated that Source, an acquaintance of Defendant's, had visited Defendant at his residence five to six  times over the last three years

and, during each visit, Defendant showed Source images and videos of children engaged in sexually explicit conduct.  According to Source, Defendant had hundreds of images and videos of minors engaged in sexually explicit conduct; Defendant had provided Source with DVDs and CDs which contained hundreds of such images and videos;  and Defendant had confided in Source about molesting a five year old girl within the last three years and had shown Source pictures of the assault.  Agent Ledford stated in the affidavit that Source's last contact with Defendant was in May 2007, at which time, Defendant provided child pornography to Source.  Agent Ledford detailed the retention habits of individuals who view or collect child pornography.  These details were based upon information provided by a supervisory special agent who had credentials as an expert witness in the area of child pornography.  According to the affidavit, the majority of individuals who collect child pornography rarely, if ever, dispose of or destroy these materials.  (Doc. 10 ¶ ¶ 35-41).

"Probable cause for a search warrant' exists if there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" United States v. Estey, 595 F.3d 836, 840 (8th Cir. 2010), cert. denied 130 S.Ct. 3342 (2010)(quoting United States v. Hartje, 251 F.3d 771, 774 (8th Cir. 2001), cert. denied 534 U.S. 1116 (2002).  A warrant becomes stale if the information supporting it is not sufficiently close in time to the issuance of the warrant and the subsequent search conducted  so that probable cause can be said to exist as of the time of the search.  Estey, 595 F.3d at 840.  There is no bright-line test for determining when information has become stale.  Id.   The timeliness of the information supplied in an affidavit depends on the circumstances of the case, including the nature of the criminal activity and the kind of property subject to the search.  Id.  The lapse of time is least

important when the suspected criminal activity is continuing in nature and when the property is not likely to be destroyed or dissipated.  Horn, 187 F.3d at 786.  The Eighth Circuit, as well as other courts, have held that evidence developed within several months of an application for a search warrant for a child pornography collection and related evidence is not stale.  See Estey, 595 F.3d at 840; Horn, 187 F.3d at 786-87; United States v. Davis, 313 Fed. Appx. 672, 674 (4th Cir. 2009) , cert. denied 129 S.Ct. 2884 (2009)(holding that information a year old is not stale as a matter of law in child pornography cases); United States v. Lacy, 119 F.3d 742, 745-46 (9th Cir. 1997), cert. denied 118 S.Ct. 1571 (1998) (warrant upheld for child pornography based on ten-month-old information).

In the present case, while the Source had not had contact with Defendant for approximately nine months, the affidavit contained information indicating that Defendant had a vast collection of child pornography, that he had maintained it for at least three years, and that child pornographers rarely disposed of their materials.   Estey, 595 F.3d at 840 (acknowledging "similar observations to the FBI agent's statements about the habits of child pornography collectors").  Based on these circumstances and the above authorities, the undersigned finds that the information provided in the affidavit was not stale and that counsel, therefore, was not ineffective in failing to challenge the search warrant on this basis.

14.    **Reliability of Source:**

Defendant argues that the Source relied upon in the affidavit was not established as reliable, as he was in jail, facing serious criminal charges, and thus, "was very highly motivated . . . to obtain a deal or any form of leniency." (Doc. 75 at p. 15).  Defendant asserts that Agent Ledford intentionally omitted this information from the affidavit to "bolster [the

Source's] believability." Defendant further argues that the Source made allegations that were not shown "to have any veracity;" that there was no reference in the affidavit of the "'track record'" of the Source; and that the information provided by the Source was not corroborated. (Doc. 75 at pgs. 15-21).

Agent Ledford's affidavit contained the following details:

* Agent Ledford met with the Source, the Source was known to Agent Ledford, and the Source's information appeared to be and was believed to be reliable.

* The Source identified Defendant by name and claimed to have information about Defendant producing, possessing, and distributing child pornography.

* The Source provided Defendant's address, which was confirmed by Agent Ledford.

* The Source provided very specific details about his visits to Defendant's residence, including the type of laptop he had and a description of the pictures and videos Defendant showed him, including the name of a series of these pictures.

* The Source gave a very detailed account of Defendant's admission of molesting a five-year old girl and described the pictures Defendant showed him of that assault.

* The Source showed agent Ledford DVDs and CDs provided to him by Defendant, and Agent Tedford confirmed that these discs did, in fact, contain images and videos of child pornography.

* The Source specifically described where Defendant hid his hard-drive – inside a wall, behind a toekick underneath a bathroom sink.

Information from an informant may be sufficient to establish probable cause "if the tip 'is corroborated by independent evidence.'" United States v. Carpenter, 422 F.3d 738, 744 (8th Cir. 2005), cert. denied 546 U.S. 1128 (2006) (internal citations omitted). In Carpenter, the Eighth Circuit held that the officers could assess the informant's credibility because the information was provided in person and the agent corroborated the tip, in part, through his

own investigation, which confirmed the location of the house and verified the name and address provided by the informant.  Id. at 744.

Agent Ledford's Affidavit indicates that his statements were based in part on information provided by Special Agents of the FBI, other law enforcement agents, and his training and experience. Agent Ledford stated in his affidavit that he met with the Source, who was known to him and believed to be reliable. (Doc. 10-1 at p. 17).  Agent Ledford set forth facts given him by the Source regarding his dealings and conversations with Defendant over a period of three years.  In addition, the information provided by the informant was corroborated by Agent Ledford's own investigation, which confirmed the location of the house and verified the name and address provided by the informant.  Finally, the Eighth Circuit in Carpenter recognized that informants "are often motivated 'in the hopes of obtaining leniency with respect to their own situation [but] that does not necessarily mean they are unreliable.'" Carpenter, 422 F.3d at 744 (quoting United States v. Gabrio, 295 F.3d 880, 884 (8th Cir. 2002).  Defendant's ineffective of counsel claim based on counsel's failure to challenge the reliability of the Source is, therefore, without merit.

15.    **Leon Good Faith Exception:**

Even if the Court were to find that the Source was not reliable and the search warrant invalid, the evidence seized would have nevertheless been admitted.  As stated in United States v. Clay, 646 F.3d 1124 (8th Cir. 2011), in United States v. Leon, 468 U.S. 897 (1984), the Supreme Court held that "the exclusionary rule should not be applied so as to bar the admission of 'evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate,' even if that search warrant is later held to be

invalid." <u>Clay</u>, 646 F.3d at 1127; <u>Leon</u> 468 U.S. at 900.

In <u>Leon</u>, the Court set forth four situations in which an officer's reliance on a warrant would be unreasonable:

> (1) if the magistrate or judge issuing a warrant was misled by information in an affidavit that the affiant knew was false or should have known was false except for his reckless disregard for the truth;

> (2) where the issuing magistrate wholly abandoned his [or her] judicial role in the manner condemned;

> (3) when the affidavit supporting the warrant is so lacking in indicia of probable cause "as to render official belief in its existence entirely unreasonable," or

> (4) where the warrant itself is so "facially deficient - i.e., in failing to particularize the place to be searched or the things to be seized-that the executing officers cannot reasonable presume it to be valid..

<u>Id.</u> at 923.

In the present case, none of the four situations are applicable.  There is no indication that Magistrate Judge James Marschewski was misled by information in the affidavit, or that he wholly abandoned his neutral judicial role.  There are numerous indicia of probable cause contained in the affidavit to allow an officer to reasonably believe they exist. Finally, the warrant itself is not so facially deficient that no executing officer could reasonably presume it to be valid.

Accordingly, the officers executing the warrant acted with a good faith reasonable belief that the warrant was not defective, and the fruits of the search would not have been excluded in this case.  Defendant has therefore failed to establish that his counsels' conduct fell outside the wide range of reasonable professional assistance, and that his counsel provided ineffective assistance on this ground.

16.    **Veracity Hearing:**

Defendant claims that counsel was deficient because he did not request a veracity hearing, more commonly referred to as a <u>Franks</u> hearing.[3]   Defendant contends that the Affidavit did not reveal that the Source was in jail and facing serious criminal charges that would result in a lengthy prison sentence; nor did the Affidavit reveal that there was no suspicious behavior observed during surveillance of Defendant's residence.  The Government argues that the omission of these facts was of no consequence to the determination of probable cause, given the amount of evidence recited in the affidavit was considerable and enough to overcome doubt, if any, that might have been cast on the informant's alleged lack of credibility.

"To obtain relief under *Franks*, 'a defendant must first demonstrate that the law enforcement official deliberately or recklessly included a false statement, or omitted a truthful statement from his warrant affidavit.'" <u>United States v. Mashek</u>, 606 F.3d 922, 928 (8th Cir. 2010) <u>cert.</u> <u>denied</u> 131 S.Ct. 1605 (2011)(quoting <u>Carpenter</u>, 422 F.3d at 745).  "Next, the defendant must show that the affidavit would not establish probable cause if the allegedly false information is ignored or the omitted information is supplemented. " <u>Mashek</u>, 606 F.3d at 928, quoting <u>United States v. Reinholz</u>, 245 F.3d 765, 774 (8th Cir. 2001).  The Court may infer recklessness from the fact of omission of information from an affidavit when the material omitted would have been "clearly critical" to the finding of probable cause.  <u>Mashek</u>, 606 F.3d at 928, quoting <u>United States v. Reivich</u>, 793 F2d 957, 961 (8th Cir. 1986); <u>Hager</u>, 2013 WL 1274564 at *7.

---

[3]<u>Franks v. Delaware</u>, 438 U.S. 154 (1978).

As was the case in <u>Carpenter</u>, Defendant cannot meet the first <u>Franks</u> requirement, because he relies entirely on his own accusations that Agent Ledford acted deliberately or recklessly in omitting the information at issue.   Defendant has not offered any proof that Agent Ledford acted deliberately or recklessly in preparing the warrant application.  Further, even if Defendant could meet the first <u>Franks</u> requirement, it would not undermine the probable cause underlying the warrant, which, as detailed above, was based upon considerable evidence.

Accordingly, the Court finds that Defendant's ineffective assistance of counsel claim based on counsel's failure to request a <u>Franks</u> hearing  fails.

### **Ground Four:**

17.     Defendant argues that counsel was ineffective in failing to properly prepare the motion to dismiss on speedy trial grounds and in filing the motion "earlier than the Defendant specified."  (Doc. 75 at p. 8).  On direct appeal, Defendant argued that the district court violated the Speedy Trial Act, 28 U.S.C. § 3161, by failing to bring him to trial within 70 days of his arraignment after counting the properly excluded time.  <u>Rector</u>, 598 F.3d at 469.

In the motion now before the Court, Defendant states:

> By failing to properly prepare the motion to dismiss the charges for violating the Speedy Trial Act, (document #26), and by filing the motion earlier than the Defendant specified, Counsel #2 prejudiced the Defendant because one or both of these errors caused the motion to fail (see document #29).

(Doc. 75 at p. 8).

"[C]laims which were raised and decided on direct appeal cannot be relitigated on a motion to vacate pursuant to 28 U.S.C. § 2255."  <u>Davis v. United States</u>, 673 F.3d 849, 852

(8th Cir. 2012)(quoting Bear Stops v. United States, 339 F.3d 777, 780 (8th Cir. 2003)). Defendant's arguments before the Eighth Circuit rested on whether the lower court was correct in computing the excludable time under the Speedy Trial Act.  The speedy trial issue was considered and rejected by the Eighth Circuit and the issue cannot be relitigated in Defendant's  motion to vacate. Defendant's ineffective assistance of counsel claim based on this ground therefore fails.

### **Ground Five:**

18.   Defendant asserts that counsel was ineffective by failing to request a pre-trial hearing to determine the voluntariness of Defendant's statements.  Defendant contends that during the execution of the search warrant, Agent Ledford and other agents found the hard drive that had been hidden, Agent Ledford "took the hard drive and the Pelican case and walked back into the livingroom with Mr. Rector, and essentially threw it on the coffee table in front of him." (Doc. 56 at p. 161).  Defendant argues that this was "intentionally done to startle the Defendant and to elicit incriminating statements from the Defendant when counsel was not present." (Doc. 75 at p. 22).  A review of the transcript reveals that, according to Agent Ledford's testimony, after he threw the hard drive on the coffee table in front of Defendant, Defendant:

> immediately closed his eyes, took his hand up to his forehead, started rubbing it, and it was more or less silence for about the first minute, and after that pont, he uttered just spontaneously that "I'm" – and then used an explicative – f-u-c-k-e-d. "I'm", explicative. And he said that three times, and stated that his life was over, his company was destroyed, nobody would want to hire him, that his family – he could not tell his family what he had done, and that everything was just – it was – it was over.

(Doc. 56 at p. 161).

In the Affidavit submitted in support of the Criminal Complaint, Agent Ledford stated that when they went to Defendant's home to execute the search warrant, Defendant was "informed by your Affiant multiple times that he would not be arrested the day the search warrant was executed and that he could leave the residence at any time, and that Defendant stated he understood."  (Doc. 1 at p. 4).  Agent Ledford further stated that he informed Defendant of his Miranda Rights and the Defendant eventually invoked his right to an attorney, "but chose to stay inside his residence while agents executed the search warrant." (Doc. 1 at p. 4). After seeing the agents had discovered the hard drive, Defendant uttered some statements, and according to Agent Ledford, Defendant subsequently left the residence and went to work.  (Doc. 1 at p. 4).

"A voluntary statement made by a suspect, not in response to interrogation, is not barred by the Fifth Amendment and is admissible with or without the giving of *Miranda* warnings." United States v. Lawrence, 952 F.2d 1034, 1036 (8th Cir. 1992) cert. denied 503 U.S. 1011 (1992).  *"Miranda* protections are triggered only when a defendant is both in custody and being interrogated." United States v. Hatten, 68 F.3d 257, 261 (8th Cir. 1995), cert. denied 516 U.S. 1150 (1996).  "A statement is involuntary when it was extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination." Simmons v. Bowersox, 235 F.3d 1124, 1132 (8th Cir. 2001), cert. denied 534 U.S. 924 (2002), reh'g denied 534 U.S. 1158 (2002).

There is no indication that the agents restrained, threatened, or coerced Defendant. The statements referenced by Defendant were made spontaneously in his own home, a

location which has been held to not be "indicative of the type of inherently coercive setting that normally accompanies a custodial interrogation." United States v. Vinton, 631 F.3d 476, 481 (8th Cir. 2011) cert. denied 132 S.Ct. 213 (2011)(quoting United States v. Czichray, 378 F.3d 822, 826 (8th Cir. 2004)), and United States v. Helmel, 769 F.2d 1306, 1320 (8th Cir. 1985).  Further, Defendant was allowed to leave the residence upon his request.  Defendant has therefore failed to show ineffective assistance of counsel on this ground, because there was no credible evidence that Defendant's statements were involuntary and that the filing of a motion to suppress Defendant's statements would have been successful.

**Grounds Six and Seven:**

19.     Defendant argues that counsel was ineffective in failing to properly advise the Defendant not to waive his right to a jury trial.  Defendant asserts that counsel's failure prejudiced him, "because receiving a fair bench trial from this trial judge was an impossibility due to the bias and lack of impartiality of the trial judge, which is demonstrated by the record." (Doc. 75 at p. 23).  Defendant asserts that counsel's failure further prejudiced him because he was "deprived of his right to ask for, and receive, a jury instruction on the Defendant's theory of the case and/or a jury nullification instruction."  (Doc. 75 at p. 24).

20.     The morning of trial, Defendant made a motion to "excuse and dismiss Bart Smith because of differences that he and I have and because of ineffective assistance of counsel." (Doc. 56 at p. 66).  Judge Hendren went to great lengths to warn Defendant of the dangers of representing himself, and Defendant nevertheless chose to do so, with Smith serving as standby counsel.

Judge Hendren then called the case up for trial to proceed with the selection of the

jury.  However, at that point, at a sidebar, Smith advised the Court that Defendant wanted to

make a motion for a bench trial and to reinstate him as his attorney.  (Doc. 56 at p. 102). Upon

further inquiry by Judge Hendren, Defendant stated that he felt it was in his best interest to

waive a jury trial and reinstate  Smith as his attorney.  (Doc. 56 at p. 103).  He  stated that he

"just now" came to that conclusion.  After considering the request, Judge Hendren stated the

following in open court:

> THE COURT: As I understand it, the motion that Mr. Rector wishes
> now to make, and did make at sidebar, is that he be permitted to waive
> trial by jury and to consent to have his case tried to the Court without
> a jury. The second part of the motion was that he be permitted to re-
> hire ... Mr. Smith as his counsel and to assist him in the trial.  Is that
> a fair statement, Mr. Smith, of what your motion was?
>
> MR. SMITH:  Yes, sir.
>
> THE COURT: Mr. Rector, do you agree?
>
> MR. RECTOR: Yes, sir.

(Doc. 56 at p. 107).  When Judge Hendren subsequently asked Defendant if he wanted to add

anything, Defendant responded that if he was able to waive substantive rights, like

presumption of innocence, "then I think I should be able to waive the trial by jury." (Doc. 56

at p. 108).  Defendant further stated:

> MR. RECTOR: And as for the – as for waiving the trial by jury, one
> of the things that scares me about that is the frenzy people seem to be
> in about these sort of charges. That – that's scary. And I feel that
> having the trial in front of just you, Your Honor, is going to be in my
> best interest because I believe that your long experience and clear
> knowledge of what's supposed to be going on in the courtroom is
> going to be much greater than what this jury may have. And I think
> that I will get more fair treatment by a bench trial versus a jury trial.

(Doc. 56 at p. 110).  Judge Hendren went to great lengths to question Defendant about his

request to waive his trial by jury:

> THE COURT: Now then, do you have it in your mind that if I agree with this, you're later going to come in and say, "Well, I got bulldozed"?
>
> MR. RECTOR: Not at all, sir.
>
> THE COURT: "I got pushed"?
>
> MR. RECTOR: Not at all, sir, no.
>
> THE COURT: Well, now think about it. You'll have a long time to think about it if you're convicted, and you have a long time to think about it if you don't, but I don't want to go through with this and then have you come back and say, "Well, I got bulldozed. I got in there and was intimidated by a jury, and the judge is telling me, 'Boy, you ought to have a lawyer,' and I just – I was nervous and I didn't know what I was doing, and I just – I was just pushed into doing it"? Are you going to say that?
>
> MR. RECTOR: No, sir. I mean, it is true that I'm nervous.
>
> THE COURT: Well –
>
> MR. RECTOR: But I – but I don't feel as if I'm being coerced or –
>
> THE COURT: . . . If we go forward with this thing, are you going to come back and file motions or contentions that somehow I, or the United States Attorney, or your own attorney bulldozed you into this?
>
> MR. RECTOR: No, sir.
>
> THE COURT: You're telling me this is what you want to do?
>
> MR. RECTOR: A bench trial is what I'm asking for, Your Honor.
>
> THE COURT: You want a bench trial, and you want Mr. Smith to represent you?
>
> MR. RECTOR: Yes, sir.

(Doc. 56 at pgs. 113-116).  As if Defendant had not been thoroughly questioned regarding

his desire to waive a trial by jury, Judge Hendren again asked him:

> THE COURT: . . .I still want to ask you one more time, and tell me, Mr. Rector, why I didn't hear about this before today, because, frankly, after Monday – and I talked as strongly to you as I could and encouraged you to get a lawyer. I think at that time, I mentioned to you the risk that you run in backing off and going away from what you apparently had agreed to and what the – the stakes are pretty high. I, frankly, thought all day yesterday – I asked my staff two or three times if I had heard anything from Mr. Smith or Mr. Rector, thinking that something like this might happen.
>
> I didn't envision just exactly this thing, but I kept thinking I may hear something, but I didn't. So I called in 60 people out there, at government expense. We've got to pay them. What is it? How much apiece? Forty bucks? It's quite a bit of money, over a couple thousand dollars, that looks like to me is wasted. And I'm asking myself, why am I wasting government money? And I'm not sure that I am.
>
> And I guess I need to have you tell me one more time. Why is it that just – we had this conference here, spent an hour or so in here talking about your motions and other things, and then it wasn't until I actually start the voir dire that you get up and have Mr. Smith get up and say that. Can you tell me what - was it just the sight of the jury out there, or was it what I said during the pretrial?
>
> MR. RECTOR: Well, Your Honor, I guess I wasn't aware that I could have made this request in our previous meeting in here, in your chambers, and so that's one reason why I didn't bring it up then. Also, I wanted to have an opportunity to talk to Mr. Smith again.

(Doc. 56 at pgs. 118-119). Judge Hendren then proceeded with a Rule 11 inquiry regarding Defendant voluntarily waiving his right to a trial by jury and Defendant executed a written waiver form.  (Doc. 56 at pgs. 124-127, Doc. 30).

Defendant very carefully and clearly indicated that it was his decision, and gave credible reasons for making that decision, such as the fact that the charges against him seemed to put people in a "frenzy."  This is a valid tactical reason, since the evidence relating to the child pornography charges against Defendant were graphic, explicit, and repugnant.

Defendant stated that he felt that having the trial before Judge Hendren was in his best interest and that he would get more fair treatment.   As Defendant never had a constitutional right to standby counsel at this point in the proceedings, he is not entitled to relief on the ineffectiveness of standby counsel.  See United States v. Reed, 668 F.3d 978, 986 (8th Cir. 2012)("[A] defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel'") (quoting Faretta v. California, 422 U.S. 806, 834 n. 46 (1975)).

In United States v. Cain, No. 4:06CR3014, 2008 WL 5423845 (D. Neb., Dec. 30, 2008), Defendant claimed that his counsel misadvised him about seeking a bench trial. However, this was refuted by Defendant's handwritten letter to the judge where he expressed thoughtful and intelligent personal reasons for seeking a bench trial, and the judge's "on the record" examination of Defendant that established his jury waiver was knowing, intelligent and voluntary.  Id., at *6.  The same is true in the present case.  As indicated in the transcript references above, Defendant gave Judge Hendren specific reasons why he believed tactically that a bench trial would be in his best interest, and Judge Hendren took great pain to make sure Defendant understood what he was doing and that Defendant's waiver was voluntary.

21.    Even if the Court determined that Defendant's trial counsel served as his lawyer throughout the entire proceedings, his claim on this issue would nevertheless fail, since there is no ineffectiveness when the decision is tactical and there is no evidence that a jury would have reached a different result.  Correll v. Thompson, 63 F.3d 1279, 1292 (4th Cir. 1995), cert. denied 516 U.S. 1035 (1996).  The evidence against Defendant was overwhelming and the Court has no doubt that had the case been presented to a jury, the result would have

been the same.  "An attorney's decision to waive his client's right to a jury is a classic example of a strategic trial judgment, 'the type of act for which *Strickland* requires that judicial scrutiny be highly deferential." <u>Hatch v. State of Okla.</u>, 58 F.3d 1447, 1459 (10th Cir. 1995) (quoting <u>Green v. Lynaugh</u>, 868 F.2d 176, 178 (5th Cir. 1989 ), <u>cert. denied</u> 493 U.S. 831 (1989) (per curiam)(overruled on other grounds by <u>Daniels v. United States</u>, 254 F.3d 1180, 1188, n. 1 (10th Cir. 2001)), <u>cert. denied</u> 517 U.S. 1235 (1996).  "For counsel's advice to rise to the level of constitutional ineffectiveness, the decision to waive a jury must have been 'completely unreasonable, not merely wrong, so that it bears no relationship to a possible defense strategy.'" <u>Hatch</u>, 58 F.3d at 1459 (citations omitted).

22.     Defendant also contends that counsel failed to properly advise him that regarding waiving his right to a jury trial, he was deprived of receiving a jury instruction on his theory of the case and/or a jury nullification instruction.  The Eighth Circuit has held that a criminal defendant is entitled to a "theory-of-defense instruction that is timely requested, correctly states the law, and is supported by the evidence." <u>United States v. Morales</u>, 684 F.3d 749, 757 (8th Cir. 2012)(quoting <u>United States v. Christy</u>, 647 F.3d 768, 770 (8th Cir. 2011). In this case, Defendant has not presented the Court with any instruction that he would have requested regarding his theory of the case, or pointed to any evidence that would have supported such a request.

Further, with respect to his "nullification" argument, wherein the district court would have told the jury that it had a right to ignore the court's instructions on the law in the case, <u>United States v. Drefke</u>, 707 F.2d 978, 982 (8th Cir. 1983), <u>cert. denied</u> 464 U.S. 942 (1983), the Eighth Circuit has held that federal courts have "uniformly recognized the right and duty

of the judge to instruct the jury on the law and the jury's obligation to apply the law to the facts, and that nullification instructions should not be allowed." Id.  "Today jurors may have the power to ignore the law, but their duty is to apply the law as interpreted by the court, and they should be so instructed." United States v. Boardman, 419 F.2d 110, 116 (1969), cert. denied, 397 U.S. 991 (1970).  Defendant would not have been entitled to present a nullification instruction.

Accordingly, Defendant has failed to show that counsel was ineffective or that he was prejudiced by waiving his right to a jury trial, or by not being able to present a theory of the case or nullification instruction.

### Ground Eight:

23.    Defendant asserts that Smith was ineffective in failing to move for Judge Hendren to recuse himself, based upon comments Judge Hendren made about Defendant participating in "gamesmanship."

"Recusal is required 'in any proceeding in which [a judge's] impartiality might reasonably be questioned.'" United States v. Rubashkin, 655 F.3d 849, 858 (8th Cir. 2011), cert. denied 133 S.Ct. 106 (2012)(quoting 28 U.S.C. § 455(a)).  "The test for determining whether a judge's impartiality might reasonably be questioned is an objective one." A.J. by L.B. v. Kierst, 56 F.3d 849, 861 (8th Cir. 1995). "[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible ." Liteky v. United States, 510 U.S. 540, 555 (1994).

> Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.. . . . A judge's ordinary efforts at courtroom administration -even a stern and short-tempered judge's ordinary efforts at courtroom administration- remain immune.

Id.

At the change of plea hearing held on August 25, 2008, Defendant advised Judge Hendren that he did not want Smith to continue as his attorney. Because of Defendant's prior actions in the proceedings, which Judge Hendren set forth at the beginning of the hearing, he instructed Defendant as follows:

> THE COURT: Now, Mr. Rector, the reason I press you hard on this, sir, is this is not a legal playpen here. This is not a game. This is a United States District Court, and I have an obligation to move these cases along.
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And I have an obligation to insure that there's no gamesmanship going on here.
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: This case is set for trial, and, sir, with what I look at, if you made this agreement, you made quite a deal, it seems to me. With these six counts that are laid against you in Arkansas, if you're convicted on those, you're probably going to spend the rest of your life in prison. If you plead to that Information, as I understand it, if that had gone down like it was planned, you could have maybe a 30-year cap on that and have a possibility of getting a much less sentence. So it seems to me that your attorneys, Mr. Watson or Mr. Smith, who negotiated that deal, did one fine job for you.
>
> If it's not gone through, if you don't go through with it, it doesn't matter to me. I'm here to try the case. I express no view about it one way or the other. But I'm a lawyer too, with 45 years since I got out of law school....And I can

tell you, sir, that deal, as I see it, looks pretty good. But that's your call. If you want to say, "I don't want to do that. I want to go to trial," that's fine. But it's not necessarily your call as to whether I release your attorney.

Now, you can fire him. You can tell him to take a walk, but I will not release him. You picked him. This trial is going to start Wednesday morning unless you go ahead with your plea. And so if you fire him, I'm going to require him to be here as standby counsel. . . .

THE DEFENDANT: Your Honor, again, I do want you to understand, I'm not trying to play games with your court, and –

THE COURT: Well, do you understand, Mr. Rector, that if I allow a defendant to hire a lawyer, and then we get up and tell everybody he's going to plead – and that's what you did here. You represented to me, to the United States, and Mr. Watson, that you were going to plead back on July the 23rd. Did you not, sir?

THE DEFENDANT: Yes, sir.

THE COURT: And then you get up and say, "No, I'd rather not. And besides, I want to get rid of that attorney and get me another one." And I say, "Okay, fine." So you get you another attorney, and then you again tell the United States and tell me that you're going to come in and plead today, and then we get here today, and you say, "No, I'd rather not. I'm going to fire this guy, and Judge, I want you to give me another attorney." How many times do you think, Mr. Rector, I should permit you to do that before I decide this is a game? Should I do it one more time?

THE DEFENDANT: One more time, yes, sir.

THE COURT: No, sir.

                . . .

THE DEFENDANT: I just – I just want you to understand, Your Honor, that I'm not trying to play games, and that I'm strictly acting in what I think is my best interest.

THE COURT: Well, Mr. Rector, I – I hear you. I don't believe you. I think that's exactly what you're trying to do is to play games, and I think, sir, that you don't understand the game. I think that if you proceed on the course that you're following, you're placing yourself at tremendous risk. . . .If it's a game, I don't think you understand it, sir, and I do believe it is a game. I think that's what you're doing here.

(Doc. 56 at pgs. 51-56).

Clearly, in the present case, Judge Hendren was skeptical as to Defendant's reasons for wanting to dismiss Smith and not go forward with his plea, because of Defendant's past actions, and Judge Hendren's remarks regarding gamesmanship, which although may be viewed as questioning Defendant's motives, do not support a bias or partiality challenge. Judge Hendren was simply attempting to move the proceedings along without unnecessary further delay.

Defendant's claim of ineffective assistance of counsel on this ground is, therefore, without merit, as he has failed to demonstrate counsel was deficient for failing to file a motion for recusal.

### Ground Nine:

24.     Defendant argues that counsel was ineffective in failing to object to the charges "that are multiplicitous and/or violate the Double Jeopardy Clause."  (Doc.75 at p. 25).  During the pre-trial conference, Defendant himself made a motion to consolidate Charges 3 through 6 as duplicative. (Doc. 56 at p. 83).  The Government argued that the charges in Counts 3 through 6 were not duplicative, as they each charged a single transaction and set out with specificity a single image that Defendant received on a different date. (Doc. 56 at p. 84).  Judge Hendren agreed with the Government's position and denied Defendant's motion.

25.     Defendant also made a motion to consolidate Charge 1 with 3 through 6, arguing that receiving and possessing child pornography were virtually the same thing. (Doc. 56 at pgs.84-85).  The Government argued that the charges had a different criminal culpability

and were charged under different subsections of the statute.  Judge Hendren agreed and denied the motion.  (Doc. 56 at p. 85).

Clearly, Judge Hendren heard Defendant's arguments on the charges being multiplicitous and rejected them. In addition, Defendant has failed to show how the proceeding would have been different had counsel objected on these grounds and he has therefore failed to demonstrate prejudice.  Accordingly, the Court sees no merit to this ineffective assistance claim.

## Ground Ten:

Defendant argues that Smith was ineffective in failing to obtain expert witness testimony to rebut the testimony of Government witnesses or to testify on his behalf. Defendant contends that this prejudiced him by allowing false testimony, which implied guilt, to stand unchallenged.

Defendant has failed to identify an expert witness and how he or she would have testified. He also failed to specify why such additional evidence would likely have affected the result of his trial.  Therefore, he has failed to prove that his counsel's assistance was ineffective in this regard.  See Delgado v. United States, 162 F.3d 981, 982-983 (8th Cir. 1998); Gail v. Dingle, No. 08-404, 2010 WL 681302 at *10 (D.Minn. Feb. 23, 2010).

## Grounds Eleven and Twelve:

26.     Defendant argues that Smith was ineffective by failing to properly object at trial and at sentencing to evidence and references to the evidence that was obtained as a result of plea agreements that were not consummated.  He also alleges that Smith was ineffective in "'opening the door'" to such evidence.  (Doc. 75 at pgs. 27-28).

On July 23, 2008, when Defendant appeared before Judge Hendren for him to consider a written Plea Agreement and possible plea, he was represented by Watson.   (Doc. 56 at p. 19).   At the hearing, Defendant advised Judge Hendren that he was not satisfied with Watson's representation and wanted to discharge him and employ Smith.  (Doc. 56 at p. 23). Judge Hendren noted that he had a copy of the Plea Agreement "that apparently you have already signed." (Doc. 56 at p. 23).  Defendant agreed that he did sign one, but that he did not think he should have signed it.  (Doc. 56 at p. 23).

The Plea Agreement, dated June 20, 2008, contained the following provision:

> 16.  By signing this agreement, the defendant acknowledges that he has been advised of his rights under Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence. If the defendant should breach any provision of this plea agreement, then he hereby agrees that said breach operates as a WAIVER of his rights under Rule 11(f) and Rule 410. Upon defendant's breach of any provision of this agreement, the government shall be allowed to use and to introduce into evidence any one or more of the following:
>
> > a.  admissions against interest, both oral and written, made by the defendant to any person;
> > . . .
> > e.   any and all physical evidence of any kind which the defendant has provided to the government; and
> >
> > f. any and all information provided by the defendant to the government's attorneys, or to federal, state, county, and/or local law enforcement officers.

(Doc. 91-1 at p. 6).

In United States v. Young, 223 F.3d 905 (8th Cir. 2000), cert. denied, 531 U.S. 1168 (2001), the Eighth Circuit held that by signing the Plea Agreement, which contained language similar to that in the present case, Defendant effectively waived his rights under Fed.R.Evid. 410 and Fed.R.Crim.P. 11, and that the Government was permitted to introduce the factual

statement and the plea agreement.  Id. at 911.

There is no indication that Defendant entered into the Plea Agreement unknowingly or involuntarily in this case. On the contrary, Defendant simply said that he did not think he should have signed the agreement.  Accordingly, Defendant's agreement to "waive the exclusionary provisions of the plea-statement Rules is valid and enforceable." Young, 223 F.3d at 909; quoting United States v. Mezzanatto, 513 U.S. 196 (1995).  When Defendant signed the plea agreement and then informed the Court that he did not think he should have signed it, he breached the written agreement, waiving his rights under Fed.R.Evid. 410 and Fed.R.Crim.P. 11.  Therefore, Defendant's ineffective assistance of counsel claim based upon Smith's failure to object to admission of evidence contained in the plea agreement is unavailing.

27.     Defendant also contends that Smith was ineffective by engaging in a line of questioning of a Government witness that "opened the door" to matters that were prohibited by Judge Hendren when he granted a motion in limine, allowing "inferences to guilt and an opportunity to lengthen the sentence." (Doc. 75 at p. 28).  At the trial, upon cross-examination of Agent Ledford, Mr. Smith asked him how he obtained the encrypted password which allowed them to determine what was in the encrypted images. (Doc. 56 at p. 245).  At that point, the Government's counsel advised the Court that this had been the subject of a Motion in Limine the defendant himself asked the Court to consider.  She stated that she had instructed Agent Ledford not to discuss anything that might suggest any plea negotiations. At this point, Judge Hendren stated:

THE COURT: Well, we don't have a jury, and, of course, the Court is

already aware of the fact that there might have been a Plea Agreement.
It's not necessarily negotiations. But it seems to me it would be in the
defendant's interest to protect that information, and he's asking the
question. So I think it's relevant. Objection overruled. You may
answer.

A: I believe he provided it to us in hopes that he would receive a
lighter sentence rather than going to trial.

(Doc. 56 at p. 246).

Even if Smith erred in "opening the door" with respect to the issue referenced above,

this was not sufficiently prejudicial to warrant habeas relief.  See Parker v. Bowersox, 94 F.3d

458, 461-62 (8th Cir. 1996), cert. denied 520 U.S. 1171 (1997). The evidence was so strong

in this case that the outcome could hardly have been other than a judgment of conviction but

for this alleged error.  See id.   In addition, in a bench trial, even if the district court erred in

allowing the testimony, said error would be harmless, because very little prejudice, if any,

would result.  See United States v. W.B., 452 F.3d 1002, 1006 (8th Cir. 2006).

Based upon the foregoing, the Court believes Defendant has failed to show that he was

prejudiced by counsel's line of questioning on cross-examination.

### **Ground Thirteen:**

28.     Defendant contends that Smith was ineffective in failing to properly question

or attempt to impeach any of the Government's witnesses, thereby "allowing all of this

testimony to stand without challenge." (Doc. 75 at pgs. 28-29).  The Eighth Circuit has held

that cross-examination techniques, like other matters of trial strategy, are generally entrusted

to the professional discretion of counsel.  United States v. Orr, 636 F.3d 944, 952 (8th Cir.

2011), cert. denied, 132 S.Ct. 758 (2011) quoting United States v. Villalpando, 259 F.3d 934,

939 (8th Cir. 2001); Morelos v. United States, No. 12-1182, 2013 WL 978218 at *2  (8th Cir.

Mar. 14, 2013).  In addition, defense counsel's decision not to call a witness is a "'virtually unchallengeable decision of trial strategy.'" United States v. Staples, 410 F.3d 484, 488 (8th Cir. 2005).  Defendant has failed to prove he was prejudiced by Smith's efforts, and his allegations are "merely speculative," generally averring it was error to allow the Government's testimony to stand, without challenge.  Defendant further states that "this deficient participation in the adversarial process has[sic] a pervasive effect on the entire proceeding and cannot help but to engender a perceived prejudice that is evident to all those present."  (Doc. 75 at p. 29).  Again, such statement is merely speculative and conclusory, and Defendant has failed to support his argument that Smith was ineffective in failing to properly question or attempt to impeach any of the Government's witnesses.

### Ground Fourteen:

29.    Defendant contends that Smith was ineffective in failing to advise the defendant to take the witness stand to deny the charges against him, and in failing to call any witnesses or present any defense of any kind.  As pointed out by the Government, with respect to not calling Defendant to testify, Defendant does not allege his attorney told him he could not testify or inform him that he had no right to testify.  He did not indicate to the trial court he wished to testify, nor did he object when counsel rested without calling him.  In addition, Defendant has produced no evidence indicating what his testimony would have been, other than a general denial of the charges.  Accordingly, Defendant has given the Court no basis to conclude that Smith's alleged failure to call him prejudiced his defense.  See Hines v. United States, 282 F.3d 1002, 1004 (8th Cir. 2002), cert. denied 550 U.S. 938 (2007).

30.     With respect to Defendant's argument that Smith was ineffective in failing to

call any witnesses or present any defense of any kind, Defendant has failed to indicate what individuals Smith should have called or what their testimony would have been.  In Williams v. United States, 452 F.3d 1009, 1013 (8th Cir. 2006), cert. denied, 550 U.S. 938 (2007), the Eighth Circuit provided a three-prong analysis to be used in determining whether prejudice resulted from an attorney's decision not to call a witness: "(1) the credibility of all witnesses, including the likely impeachment of the uncalled defense witnesses; (2) the interplay of the uncalled witnesses with the actual defense witnesses called; and (3) the strength of the evidence actually presented by the prosecution."  Id. (internal citations omitted).

In this case, because Defendant failed to specify which individuals and what testimony might have been introduced, there are no facts upon which the Court could engage in the three-prong analysis, and it is therefore clear that Defendant has failed to prove that  Smith was ineffective, because he has failed to show any prejudice. "Reasonable trial strategy does not constitute ineffective assistance of counsel simply because it is not successful." James v. Iowa, 100 F.3d 586, 590 (8th Cir. 1996);  Rodriguez v. United States, No.  CIV - 08-4033, No. CR 05-40064, 2010 WL 2196074 at *6 (D.S.D. May 28, 2010).   Once again, Defendant has failed to provide the Court with any basis to conclude that  Smith's alleged failure to call witnesses prejudiced his defense.

**Grounds Fifteen and Sixteen**:

31.    Defendant argues that Smith was ineffective in failing to move to dismiss all of the charges of the indictment "because charge #2 had not been proven beyond a reasonable doubt; it was not proved that the Defendant moved any of the evidence in interstate commerce:," and the statute "that was used to convict the Defendant" was unconstitutional,

as it "interfered with the powers reserved to the states."  (Doc. 75 at pgs. 30-31).

The Government argues that in this case, the evidence included a Western Digital USB external hard drive, manufactured in Malaysia, containing thousands of images and videos containing child pornography, and that there was evidence Defendant possessed child pornography in the Western District of Arkansas found on a hard drive manufactured outside of Arkansas.  (Doc. 80 at p. 41).

In United States v. Koch, 625 F.3d 470, 479 (8th Cir. 2010), the Government was required to establish that the child pornography Defendant possessed had been transported in interstate commerce or produced using such materials.  Defendant argued that the Government had to provide direct evidence that the illegal images had in fact crossed state lines by the internet.  Id.  The Eighth Circuit stated:

> Not only has that ruling been rejected by every other court to consider the issue, but the government satisfied the interstate commerce element here by showing that the illegal images were produced using materials transported in interstate commerce. The government presented evidence that Koch's computer and flash drive were manufactured in China; such evidence is sufficient to satisfy the jurisdictional requirement of 18 U.S.C. § 2252.

Id. (internal citations omitted).

At the trial, the Government attorney specifically asked Agent Ledford whether he knew whether a certain image in evidence moved in interstate and foreign commerce in order to have been downloaded on Defendant's computer on or about December 18, 2006.  Agent Ledford answered "Yes," and when asked how he knew that, Agent Ledford responded:

> Two ways. Number one, Mr. Rector's internet service was through Cox Communications, and in order to have – in order to access the internet in the state of Arkansas through Cox Communications, your computer has to communicate with DNS servers located in Wichita,

> Kansas and routers located in Atlanta, Georgia.  Otherwise, your computer will not function. It will not access the internet. Secondly, the Western Digital hard drive was manufactured not only outside of this state, but outside of this country, in Malaysia and Thailand.

(Doc. 56 at p. 226).  Agent Ledford testified there was also a third reason - that the child's identity in one of the images and all the children in Counts One through Six, were known children through the National Center of Missing and Exploited Children and that none of the children in Counts One through Six were residents in the State of Arkansas.  (Doc. 56 at p. 227).  The Government further established that during the relevant time period, Defendant had internet service through Cox Communications.  (Doc. 56 at p. 228).  It is clear, therefore, that had counsel for Defendant filed a motion to dismiss, the Court would have denied the motion, based on evidence of the hard drive's transit through interstate and foreign commerce and Defendant's use of the internet, and Defendant could not have been prejudiced by his attorney's failure to make a meritless argument.  See New v. United States, 652 F.3d 949, 953 (8th Cir. 2011).

32.     With respect to Defendant's argument that the statute "that was used to convict the Defendant" was unconstitutional, as it "interfered with the powers reserved to the states," this argument is without merit inasmuch as Congress did have authority to enact the statute. As stated by the Government, the Eighth Circuit has affirmed the constitutionality of the statutes related to child pornography against a challenge to the authority of Congress to enact such statutes.  United States v. Betcher, 534 F.3d 820, 824 (8th Cir. 2008), cert. denied 129 S.Ct. 962 (2009); United States v. Bausch, 140 F.3d 739, 740-41 (8th Cir. 1998), cert. denied. 525 U.S. 1072 (1999).

Defendant's argument on this issue is, therefore, without merit.

**Ground Seventeen and Ground Twenty-Four:**

33.     Defendant contends that counsel was ineffective in failing to object to "over thirty (30) paragraphs of the PSI Report." (Doc. 75 at p. 31). Defendant asserts that just prior to the sentencing hearing, Smith advised him that he would have to withdraw all of his objections to the PSI Report because, during a meeting in Judge Hendren's chambers, he had been "coerced and threatened ... that he would be facing some sort of sanction or penalty if he did not capitulate." Defendant argues that this prejudiced him because it allowed Judge Hendren to use the "preponderance of the evidence" standard rather than the "beyond a reasonable doubt" standard to rely on factual statements.

At the sentencing hearing held on January 9, 2009, Judge Hendren noted that Smith asserted 10 objections to the PSI Report, with sub-parts. (Doc. 56 at p. 323). He then stated that he and the attorneys visited in chambers prior to the hearing and discussed how they would approach the handling of the various objections. Smith asked for some time to confer further with Defendant, and based upon that conference, Smith informed Judge Hendren and the Government attorneys that he intended in open court to withdraw the objections that were made, except the portion of Objection Number 1 that related to Paragraphs 22 and 36 of the PSI's report. (Doc. 56 at p. 324). This was confirmed by Smith as well as Defendant. (Doc.56 at pgs. 324-326). The Government presented evidence at the hearing to prove the existence of the disputed facts. (Doc. 56 at pgs. 322-340). Judge Hendren then overruled the objections. (Doc. 56 at pgs. 326-342, 345). Defendant is unable to point to any factual inaccuracies contained in the PSI, and is unable to show his counsel was deficient for failing to pursue objections to the PSI Report.

34.     There is no merit to Defendant's argument that had his counsel made proper objections, the Court would have had to make its findings "beyond a reasonable doubt." "[I]f the defendant objects to any of the factual allegations contained therein [in the PSR] on an issue on which the government has the burden of proof, such as the base offense level and any enhancing factors, the government must present evidence at the sentencing hearing to prove the existence of the disputed facts" by a preponderance of the evidence. United States v. Poor Bear, 359 F.3d 1038, 1041 (8th Cir. 2004).  If the defendant fails to make such an objection, the Court may accept that fact as true for sentencing purposes. United States v. Bledsoe, 445 F.3d 1069, 1073 (8th Cir. 2006).

In addition, as urged by the Government, Defendant cannot demonstrate prejudice as he failed to identify any portion of his PSI Report where counsel should have objected. Defendant has also failed to demonstrate the outcome of his sentencing would have been different had his counsel not withdrawn a majority of his objections or pursued others.

35.     Defendant argues that his sentence exceeded the statutory maximum. However, as appropriately set forth by the Government in its brief, the district court may impose consecutive sentences for the counts of conviction to achieve the appropriate total punishment. Section 5G1.2(d) of the Sentencing Guidelines addresses sentencing on multiple counts as follows:

>  If the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment....

In United States v. Ervasti, 201 F.3d 1029, 1045-46 (8th Cir. 2000), the Eighth Circuit held

that the "total punishment" referenced in this provision is described by the commentary instructs that "[t]he combined length of the sentences ('total punishment') is determined by the adjusted combined offense level, "thereby suggesting that 'total punishment' is the precise sentence determined by the sentencing judge from within the appropriate guidelines range." Id.

At the sentencing hearing, Judge Hendren discussed the guideline range extensively, and also referred to the Eighth Circuit case of United States v. Betcher, 534 F.3d 820 (8th Cir. 2008). Judge Hendren stated:

> The Court then concluded that under proper sentencing protocol, the Court was justified in stacking the various offenses for the purpose of achieving what would have been dictated by the sentencing guidelines a lifetime sentence. And so in doing that, these sentences in the Betcher case were stacked together, with the result that the sentence therein imposed was for a term of 9,000 months, or 750 years. The Court there said in reviewing that that [sic] the sentence for Mr. Betcher at 9,000 months, or 750 years, was, for practical purposes, a life sentence, and that is how the Court views it.
>   . . .
>   Now, I go into that to emphasize that under the sentencing protocol, the Court believes that because of the statutory caps, it is obliged to engage in that same type of analysis, with the possibility that it could sentence Mr. Betcher – pardon me, Mr. Rector – to a combined total of 1,320 months by reason of that stacking protocol.

(Doc. 56 at pgs. 357-358).

As was found in Betcher, in this case, the district court considered the parties' arguments and had a reasoned basis for exercising his own legal decision making authority, and explained it was not bound by the guidelines, and correctly calculated the applicable sentencing range and articulated its analysis of the factors provided in 18 U.S.C. § 3553(a). In Betcher, the Eighth Circuit recognized that in a case involving a conviction on multiple

child pornography counts, a sentencing court could effectuate a life sentence under the advisory guidelines, in excess of the statutory maximum sentence of 20 years for any one count.  Betcher, 534 F.3d at 827.

The Court believes Judge Hendren permissibly imposed consecutive statutory maximum sentences on all of Defendant's counts to ensure that he serves a term of lifetime imprisonment, which was his intention.

Accordingly, Defendant has failed to provide the Court with any basis to support this ground.

36.     With respect to Defendant's argument that counsel was coerced or threatened to withdraw his objections during the conference held in chambers prior to the sentencing hearing, the undersigned believes this argument to be without merit.  As noted by the Government, prior to the sentencing hearing, Judge Hendren held a conference in chambers to discuss how Defendant's objections to the PSR would be handled.  Defendant's counsel had raised 10 objections to the PSI Report, with sub-parts.  After said meeting in chambers, in open court, Judge Hendren stated:

> THE COURT: All right. Now, I thank you and the attorneys for the Government for visiting with me in chambers before this hearing commenced, at which time we discussed how we would approach the handling of these various objections, and as a result of which you, Mr. Smith, asked for some time to confer further with Mr. Rector, and you did so. And based upon that conference, you then informed me, together with the U.S. attorneys, that it would be your intention in open court to withdraw the objections that have been made and that are set forth in the Addendum, all except the portion of Objection Number 1 that relates to Paragraphs 22 and 36 of Ms. Brown's report. Is that correct?
>
> MR. SMITH: That's correct, Your Honor.

THE COURT: And do you, in fact, so withdraw all of the those objections except those two that just were mentioned?

MR. SMITH:  Yes, sir.

THE COURT: All right, Now, Mr. Rector, did you follow that? There's, like I said, a number of objections, but I'm being told now that you will withdraw all of those objections except the one to Paragraph 22, I think the part of that that refers to a password, and then the entirety of Objection Number 36, and I think that – Well, it's Paragraph 36. Do you understand that?

THE DEFENDANT: Yes, sir, except I thought there was three objections.

THE COURT: Well, let's just see. Let's focus on it and see what it is. The objection to Paragraph 22, and I tried to paraphrase that, but my understanding is it's to this sentence: "There were 31 encrypted files found, and the files were decrypted using Rector's password which he supplied." I understand you obejct to that, right?

THE DEFENDANT: Yes, sir.

THE COURT: Now, Paragraph 36 reads: "in May, 2008, FBI contacted a DHS representative in Oklahoma, who verified that the minor child of _____ was currently in DHS custody due to abandomnent by her mother. The child 2was being housed at a therapeutic foster home, which was not doing well – but was not doing well.  The representative reviewed DHS records and confirmed that on June 26, 2006, the child reported that her _____, identified as the defendant, had taken pictures of her and put them on the internet. A forensic interview of the child was conducted by OSBI; however, no records were available to the writer of this report."
Now, I understand, Mr. Rector, you object to that.

THE DEFENDANT:  Yes, sir.

THE COURT: Okay. Mr. Rector, now you seem to think that there's another objection beyond those two that I've just mentioned?

THE DEFENDANT: I guess I was just confused. I thought there was. Evidently not.

THE COURT: Okay, because if there is, I'll need to address it right

now. Mr. Smith, are you content that these are the two objections?

THE DEFENDANT: No that's it, Your Honor.

THE COURT: ... So I'm understanding from you and Mr. Smith that we're basically going to focus on that last sentence of Paragraph 22 and the entirety of Paragraph 36. Is that right, Mr. Smith?

THE DEFENDANT: Yes, sir.

(Doc. 56 at pgs. 324-326). It is clear from the record that Defendant's counsel conferred with Defendant after the meeting in chambers, and there is no indication that Defendant's counsel was coerced or threatened into withdrawing his objections to the PSI Report. Defendant did not object to the withdrawal of some of the objections to the PSI Report or asked the Court to reopen the evidentiary hearing portion of the proceeding. Defendant only offers unsubstantiated and self-serving conclusory allegations, and has failed to present any evidence supporting his allegations.

The Court believes the Defendant has failed to show Smith was ineffective by not pursuing objections to the PSI Report as there is no basis to find that the sentence imposed was improper or inappropriate.

### **Ground Eighteen:**

37.     Defendant argues that Smith was ineffective as "borne out by the record," the "trial judge's very own words," and the fact that Mr. Smith "had never tried a case or even been in Federal Court before this case." (Doc. at pgs. 32-33).

The fact that this was Smith's first trial and appearance in Federal Court is not determinative on this issue. "The character of a particular lawyer's experience may shed light in an evaluation of his actual performance, but it does not justify a presumption of

ineffectiveness in the absence of such an evaluation." United States v. Cronic, 466 U.S. 648, 665 (1984).  In addition, even if Smith's inexperience rose to the level of a constitutional deficiency, Defendant provides mere speculation about the possible prejudice of such an error, which does not provide a basis for the Court to find Defendant was prejudiced.  See Champion v. United States, 319 Fed. Appx. 443, 446 (8th Cir. 2009).

**Grounds Nineteen, Twenty, and Twenty-One**:

38.    Defendant contends that Judge Hendren should have recused himself sua sponte, and  lists examples which he asserts "illustrate [Judge Hendren's] bias, lack of impartiality, and improper involvement in plea discussions," and states that Judge Hendren committed plain error and demonstrated bias in overruling certain objections by Smith.

The Court has specifically set forth the applicable law in its discussion in Ground Eight, regarding when a judge is required to recuse. In Grounds Nineteen, Twenty, and Twenty-One, Defendant asserts that Judge Hendren's alleged bias was shown by the deference shown to the Prosecutor, and the total lack of same for the Defense; that Judge Hendren allowed the Prosecutor to "testify" at a pre-trial conference and at trial; that Judge Hendren made repeated accusations aimed at Defendant (referencing the word "gamesmanship" again); and that Judge Hendren and the Prosecutor convinced Smith to withdraw almost all objections to the PSI report.  Defendant contends that these are examples which clearly illustrate bias, lack of impartiality, and improper involvement in plea discussions.

As stated earlier, "[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display deep-seated favoritism or

antagonism that would make fair judgment impossible ." <u>Liteky</u>, 510 U.S. at 555. The <u>Liteky</u> court stated that to support a bias or partiality challenge, the opinion must derive from an extrajudicial source or such a high degree of favoritism or antagonism as to make fair judgment impossible. <u>Id.</u>

The Court has reviewed the relevant portions of the transcript and finds that neither Judge Hendren's comments nor actions constituted a display of deep-seated favoritism or antagonism that would make fair judgment impossible.

Accordingly, Defendant's claims do not support his claim that Judge Hendren should have sua sponte recused himself.

### <u>Ground Twenty-Two:</u>

39.     Defendant contends that the Government abused its prosecutorial discretion by charging the Defendant with more serious and a greater number of charges than Guy Wesley Hamilton, who acted as the Government's informant against Defendant. Defendant argues that Hamilton was charged with only two counts of possession, while Defendant was charged with a six-count indictment.  (Doc. 75 at pgs. 39-40). He states:

> This huge, unwarranted disparity, between the charges of the Defendant and the charges of Hamilton, illustrates that absolute power can be misused, whether it be with intent or otherwise, and definitely leads to not only unwarranted disparity in sentences and disrespect for the law, but also subtracts from the integrity and fairness of the judicial process, thus skewing <u>equal</u> <u>protection.</u>

(Doc. 75 at p. 40).

"Whether to prosecute and what charge to file or bring before a grand jury are decisions that generally rest in the prosecutor's discretion." <u>United States v. Batchelder</u>, 442

U.S. 114, 124 (1979); <u>Bauermeister v. Kor Xiong,</u> 440 Fed. Appx. 521, 522 (8th Cir. 2011).

"[A] prosecutor's discretion 'is, of course, subject to constitutional constraints.'" <u>United States v. Jeanpierre</u>, 636 F.3d 416, 424 (8th Cir. 2011) quoting <u>Batchelder</u>, 442 U.S. at 125.

"[T]he decision whether to prosecute may not be based on 'an unjustifiable standard such as race, religion, or other arbitrary classification.'" <u>Jeanpierre</u>, 636 F.3d at 424, quoting <u>Oyler v. Boles</u>, 368 U.S. 448, 456 (1962).

> However, because the United States Attorneys are charged with taking care that the laws are faithfully executed, there is a "presumption of regularity support [ing] their prosecutorial decisions and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties."

<u>Jeanpierre</u>, 636 F. 3d at 425 (internal citations omitted).

As noted by the Government, Defendant is not privy to the evidence the Government had available to charge and prosecute the informant.  Further, Defendant cannot produce evidence that the Government's charging decision was based on any unjustifiable standard.

### Ground Twenty-Three:

40.    Defendant argues that his Appellate counsel, Mr. David Dunagin, was ineffective in failing to raise all of the above grounds on direct appeal.  "To establish ineffective assistance of appellate counsel, a defendant must show 1) his appellate counsel's performance fell below an objective standard of reasonableness, and 2) the deficient performance prejudiced his defense."  <u>Morelos v. United States</u>, No. 12-1182, 2013 WL 978218 at *5 (8th Cir. Mar. 14, 2013).

The question of whether appellate counsel was ineffective is "not whether counsel's choice to omit [an argument] on appeal was an intelligent or effective decision, 'but rather

whether his decision was an unreasonable one which only an incompetent attorney would adopt.'" Anderson v. United States, 393 F.3d 749, 754 (8th Cir. 2005), cert. denied 546 U.S. 882 (2005)(quoting Garrett v. United States, 78 F.3d 1296, 1305 (8th Cir. 1996) cert. denied 519 U.S. 956 (1996).  "Counsel is not required to raise every potential issue on appeal. Indeed the Supreme Court has recognized the 'importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues.'" Anderson, 393 F.3d at 754 (quoting Jones v. Barnes, 463 U.S. 745, 751-52 (1983). "'Absent contrary evidence,' we thus assume that appellate counsel's failure to assert an issue was an exercise of 'sound appellate strategy.'" Anderson, 393 F.3d at 754 (quoting Sidebottom v. Delo, 46 F.3d 744, 759 (8th Cir. 1995), cert. denied, 516 U.S. 849 (1995).

As noted by the Government, although some of the issues raised in Defendant's habeas claim could have been raised on appeal, the choice not to include them in the appellate brief was not unreasonable, as the Eighth Circuit authority established that raising them would have been fruitless.  Defendant has failed to articulate meritable issues his appellate counsel should have raised and has therefore failed to demonstrate that the outcome would have changed had appellate counsel raised his list of conclusory allegations.

Since this Court believes Defendant has failed to prove he suffered any prejudice from the manner in which his appellate counsel handled his direct appeal, Defendant's claim of ineffective assistance of appellate counsel must also fail.  See id.

**Ground Twenty-Five**:

41.    Defendant asserts that all of the grounds asserted above should be considered for their cumulative effect.  The Eighth Circuit has recognized "a habeas petitioner cannot

build a showing of prejudice on a series of errors, none of which would by itself meet the prejudice test." Middleton v. Roper, 455 F.3d 838, 851 (8th Cir. 2006), cert. denied 549 U.S. 1134 (2007)(quoting Hall v. Luebbers, 296 F.3d 685, 692 (8th Cir. 2002), cert. denied 538 U.S. 951 (2003). Each claim must rise or fall on its own merits, and Defendant's claim based upon cumulative error must also be denied.

## Ground Twenty-Six:

42.     Defendant asserts that based on the allegations of bias asserted in his motion, Judge Hendren should not preside over his § 2255 motion.  On April 17, 2010, Defendant filed a "Motion and Affidavit Requesting Recusal of Trial Judge." (Doc. 84).  On April 25, 2012, the undersigned entered an Order setting forth the applicable law, and concluded that Defendant failed to show a basis for recusal, as his allegations failed to demonstrate any "deep-seated favoritism or antagonism that would make fair judgment impossible." Liteky, 510 U.S. at 555.  (Doc. 88).

For the reasons set forth in the Court's April 25, 2012 Order, the Court finds this ground to be without merit.

## CONCLUSION

Based upon the foregoing analysis, the undersigned recommends that Defendant's § 2255 motion (Doc. 75) be DENIED and DISMISSED WITH PREJUDICE.

**The parties have fourteen days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo**

**review by the district court**.

DATED this 3rd day of April, 2013.


/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE