### IN THE UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF ARKANSAS
### FAYETTEVILLE DIVISION

UNITED STATES                                                    PLAINTIFF

v.        Criminal Case No. 08-50015

JOSEPH MICHAEL RECTOR                                            DEFENDANT

### O R D E R

Now on this 1st day of November, 2013, come on for consideration the following:

* defendant's **Amended Motion Under 28 U.S.C. § 2255** (document #75);

* the **Magistrate Judge's Report And Recommendation** (document #95); and

* defendant's **Objections To United States Magistrate Judge's Report And Recommendation** (document #97), and the Court, being well and sufficiently advised, finds and orders as follows:

1. Following a bench trial, defendant Joseph Michael Rector was convicted on six counts of possessing, distributing, and receiving child pornography, in violation of **18 U.S.C. § 2252**. He was sentenced to 1320 months imprisonment.

Rector appealed, contending that his conviction violated the Speedy Trial Act. The conviction was affirmed. **U.S. v. Rector, 598 F.3d 468 (8th Cir. 2010).**

2. Rector then moved for relief pursuant to **28 U.S.C. §**

2255 (the "Petition"), asserting 26 grounds for relief.  United States Magistrate Judge Erin L. Setser reviewed the motion and filed the Magistrate Judge's Report And Recommendation ("R&R") now under consideration, reporting that none of Rector's asserted grounds had merit and recommending that the Petition be dismissed.

Rector timely lodged his Objections to the R&R, and the Court now takes up both the R&R and the Objections for review.

3.   Ordinarily the Court would address objections in the order asserted, but it has chosen to take up two of Rector's objections out of order because they are threshold matters. Rector objects to the Court's exercise of jurisdiction, and also to the R&R's findings concerning his request that the Court recuse itself from consideration of the Petition.

4.   Rector contends that the Court lacked subject-matter jurisdiction to adjudicate the charges against him.  The basis of this jurisdictional challenge is Rector's contention that **18 U.S.C. § 3231** -- which provides that "[t]he district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States" -- was not properly enacted.

The Court need not delve deeply into Rector's lengthy and convoluted jurisdictional argument.  It is clearly a take-off on what has been described as a "rash of frivolous claims raised by prisoners across the country, many of whom have copied the

-2-

arguments directly from Internet Websites. . . ." **Cardenas-Celestino v. U.S.**, **552 F.Supp.2d 962, 966 (W.D. Mo. 2008)**. All of these arguments -- related to "the supposed irregular adoption" of **§ 3231** -- have been "firmly denied by every court to address them." *Id.*  *See also* **U.S. v. Hester**, **2012 WL 1655950 (N.D. Ill. 2012)**.

The Court is persuaded by these cases, and the cases they cite, that Rector's jurisdictional arguments are without merit.

5.   Rector contends that an appearance of bias arising from "occurrences and argument in the Amended § 2255," and "violations of Rule 11(c)(1)," require the Court to recuse under **28 U.S.C. § 455(a)**. He also contends that, although **§ 455** does not require an affidavit, one has been filed, referencing Exhibit A to the Petition.

**Section 455(a)** provides that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  This has been interpreted to mean that recusal is required where a court's impartiality might reasonably be questioned "by the average person on the street who knows all the relevant facts of a case." **U.S. v. Oaks**, **606 F.3d 530, 537 (8th Cir. 2010)**.

The Court does not believe that any reasonable person who was aware of the facts and circumstances of the case at bar would

question the Court's impartiality.  Most of Rector's "examples" of bias relate to his own gamesmanship during the period leading up to trial, and the fact that the Court recognized that gamesmanship for what it was, and called Rector out for it.  For example:

    *    Rector's first attorney informed the Court that Rector had signed a plea agreement, but when Rector appeared for the change of plea hearing, he backed out of the plea agreement and asked to discharge his attorney and retain a different one.

    *    Rector's second attorney informed the Court that Rector had signed a plea agreement, but when Rector appeared for the change of plea hearing, he again backed out, and again asked to discharge his attorney and retain a different one.

    *    On this second occasion, the Court asked Rector "[h]ow many times do you think, Mr. Rector, I should permit you to do that before I decide this is a game?   Should I do it one more time?"  Rector responded, "[o]ne more time, yes, sir. . . . I'm not trying to play games . . . ."  The court responded "I think that's exactly what you're trying to do is to play games. . . ." (Document 56, pp. 51-56).

    The Court's view of Rector as "playing games," and its comments and rulings throughout the proceedings, are not evidence of disqualifying bias.  As the Supreme Court explained in **Liteky v. U.S.**, **510 U.S. 540, 555 (1994)**,

> judicial rulings alone almost never constitute a valid
> basis for a bias or partiality motion. . . . Second,

> opinions formed by the judge on the basis of facts
> introduced or events occurring in the course of the
> current proceedings, or of prior proceedings, do not
> constitute a basis for a bias or partiality motion
> unless they display a deep-seated favoritism or
> antagonism that would make fair judgment impossible.
> Thus, judicial remarks during the course of a trial that
> are critical or disapproving of, or even hostile to,
> counsel, the parties, or their cases, ordinarily do not
> support a bias or partiality challenge.

(Internal citation omitted.)

The Court in **Liteky** cited an example of "favoritism or antagonism" intense enough to require recusal, and it puts the Court's comments in Rector's case into perspective. The statement came from a judge trying an espionage case against German-American defendants during World War I, who said: "'One must have a very judicial mind, indeed, not [to be] prejudiced against the German Americans,' because their 'hearts are reeking with disloyalty'." *Id.* The Court's comments and rulings in Rector's case are mild in comparison, and do not evidence bias or prejudice. This argument is without merit.

Rector's other contention is that the Court's comments about his plea agreements violated **F.R.Cr.P. 11(c)(1)**, and require recusal on that basis. As explained in ¶10, *infra*, the Court did not violate **Rule 11**, and this argument is also without merit.

Finally, Rector's contention that he filed an affidavit relating to recusal is without merit. The recusal affidavit provision is found in **28 U.S.C. § 144**, which provides as follows:

Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time.  A party may file only one such affidavit in any case.  It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

Rector's Affidavit, attached to the Petition as Exhibit A, states as follows:

In reference to the §2255 Motion filed contemporaneously with this affidavit, this affidavit is not being made merely to reinforce the statements contained on page 14 of the motion.  Rather, it is for the purpose of explicitly stating that I will take any kind of lie detector test or truth serum, if necessary, to prove the truthfulness of the facts stated in the motion, especially those contained in the 1st and 24th grounds, and that under the pains of penalty of perjury, I do swear that the foregoing is true and correct.

This is not a legally sufficient affidavit under **§ 144**.  Not only does it fail to state fact and reasons, and lack an accompanying certificate of good faith, but it is based entirely on the events of Rector's case.  To be legally sufficient, such an affidavit "must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case."  **U.S. v. Grinnell Corp.**, **384 U.S. 563, 583 (1966)**.  There is no contention, anywhere

-6-

in Rector's lengthy and repetitive submissions, that the Court had any form of extrajudicial bias against him.

For all these reasons, the Court finds that Rector's objections to the R&R's conclusion regarding recusal are without merit. The Court declines the request for recusal, and turns to the remaining objections.

6.   Rector objects to the R&R's report that he did not receive ineffective assistance of counsel when his trial attorney failed to challenge the Search Warrant pursuant to which various items were seized from his home. He contends that the Warrant was overbroad and lacking in particularity, that it was based on stale information, and that the informant was unproven and unreliable.

Rector reasons that if his attorney had challenged the Search Warrant, it would have been found invalid, and the evidence seized when it was served would have been suppressed. These objections are without merit.

(a)   The particularity requirement is that a search warrant "particularly describ[e] the place to be searched, and the persons or things to be seized." **United States Constitution, Amendment 4**.

The Supreme Court has explained the particularity requirement as follows:

> The manifest purpose of this particularity requirement was to prevent general searches. By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the

character of the wide-ranging exploratory searches the Framers intended to prohibit.  Thus, the scope of a lawful search is defined by the object of the search and the places in which there is probable cause to believe that it may be found.  Just as probable cause to believe that a stolen lawnmower may be found in a garage will not support a warrant to search an upstairs bedroom, probable cause to believe that undocumented aliens are being transported in a van will not justify a warrantless search of a suitcase.

**Maryland v. Garrison**, **480 U.S. 79, 84-85 (1987)** (internal quotation marks omitted).

The Search Warrant in this case authorized a search of Rector's home and person for records and materials evidencing the possession of child pornography which had been shipped in interstate commerce.  Because such evidence might be stored on an object as small as a thumb drive, an extremely wide-ranging search was justified by both the object of the search and the places in which there was probable cause to believe that it might be found. The Warrant listed these places and objects with particularity, and the fact that there were many such does not make the Warrant overbroad.  This objection is without merit, and will be overruled.

(b)  The information upon which the Search Warrant was issued was not, in a constitutional sense, stale.  Staleness is "a case-specific inquiry, and probable cause cannot be judged by simply counting the number of days between the occurrence of the facts supplied and the issuance of the affidavit." **U.S. v. Darr**, **661 F.3d 375, 378 (8th Cir. 2011)** (internal quotation marks omitted)

-8-

(information seven months old not stale in child molestation case). The nature of the criminal activity suspected, and the kind of property subject to search, must be considered. **U.S. v Estey**, **595 F.3d 836, 840 (8th Cir. 2010)** (collecting cases holding that information up to a year old is not stale in child pornography cases).

The affidavit in the case at bar recited information covering a three-year period that ended about nine months before issuance of the Warrant, relating to multiple instances when Rector was said to have shown or delivered child pornography to an informant. The Affidavit for Search Warrant stated (and cited research to support) that "[t]he majority of individuals who collect child pornography rarely, if ever, dispose of their sexually explicit materials...." (¶40(c)).

Given the nature of the crime being investigated, the kind of property subject to search, and the averred propensity of individuals who collect child pornography to maintain their collections over long periods of time, the fact that the information in the Warrant came from an informant who had been in jail for over nine months does not mean that it was stale. This objection is without merit, and will be overruled.

(c) Rector's contentions about the informant are likewise without merit. He contends that the informant's information was nothing more than accusations and allegations, not facts, and

cannot establish probable cause unless corroborated.  He also complains that the informant was highly motivated to lie about him because he was in jail and facing a lengthy prison term.  He contends that the officer who swore out the Warrant, Scott Ledford, was deceptive and used trickery to obtain the Warrant.

Information given to investigating officers about wrongdoing by a suspect is, of course, by definition only accusation and allegation unless and until proven in court.  That does not mean it is of no consequence.  When sufficiently reliable, consistent and corroborated, such accusations and allegations are the stuff of which affidavits for search warrants are made.

An examination of the documents of record reveals that the information upon which the Warrant was based was sufficiently reliable, consistent, and corroborated to justify issuance of the warrant.  The Court has reference to the following factors:

*    The informant was not an anonymous tipster insulated from consequences if he gave false information.  He was known to Ledford.

*    The informant met with Ledford in person, so that Ledford had an opportunity to assess his credibility, and his information was considered reliable by Ledford.

*    The information given was not a "bare bones" tip that "so-and-so has child pornography at his house." The informant gave an "explicit and detailed description of alleged wrongdoing . . .

observed firsthand" on multiple occasions over a period of three years. **Illinois v. Gates**, 462 U.S. 213, 234 (1983). He described what he had seen, how it was stored, the equipment used to view it, and where it was hidden.

* The information implicated the informant as well as Rector in criminal conduct. The fact that the informant may have been hoping for leniency on his own criminal charges in return for information does not necessarily mean that he was unreliable. See **U.S. v. Reivich**, 793 F.2d 957, 959 (8th cir. 1986)("'People do not lightly admit a crime and place critical evidence in the hands of the police in the form of their own admissions.***That the informant may be paid or promised a "break" does not eliminate the residual risk and opprobrium of having admitted criminal conduct'.") See also **U.S. v. Carpenter**, 422 F.3d 738, 744 (8th Cir. 2005).

* Ledford corroborated the informant's information about the location of Rector's residence, and the existence of internet service to that residence. While these are not details of criminal activity, even the corroboration of "minor, innocent details can suffice to establish probable cause. . . ." **U.S. v. Solomon**, 432 F.3d 824, 828 (8th Cir. 2005) (internal quotation marks omitted).

There is no reason to conclude that Ledford used deception or trickery to obtain the Warrant. It was not deceptive for Ledford

to omit from the Affidavit aspersions by the informant relating to the cause of death of Rector's wife, as that event is not relevant to the criminal acts being investigated. *Cf.* **U.S. v. Jacobs**, **986 F.2d 1231, 1234 (8th Cir. 1993)**. Had the information it been included, it would not have changed the probable cause analysis.

Nor was it deceptive to call the informant "Source" rather than "confidential informant" or "cooperating defendant." United States Magistrate Judges are not so naive that they would fail to understand that "source" means "informant," i.e., one who gives information against another.

An informant might, of course, be a concerned citizen, a partner in crime, or anything in between. Given the averments that the informant visited Rector 5-6 times over a period of three years, viewed child pornography each time, and received child pornography from Rector, it is clear from the Affidavit that the informant was closer to the "partner in crime" end of the spectrum than the "concerned citizen" end, with all that might imply about his credibility. Had details about the informant's criminal history been provided, the Affidavit would still have supported a finding of probable cause. See, e.g., **U.S. v. Ketzeback**, **358 F.3d 987, 991 (8th Cir. 2004)**.

Finally, there is no evidence that Ledford was aware of any lies told by the informant. While Rector alleges that both Ledford and the informant lied, he has not offered credible

-12-

evidence of any such lies.

Because Rector has failed to show that there was any valid basis for challenging the Search Warrant, it was not ineffective assistance of counsel for his attorney to fail to challenge it. This objection is without merit, and will be overruled.

7.   Rector next objects to the R&R's report that even if the informant were not reliable and the Search Warrant was invalid, the evidence seized in reliance on the Warrant would have been admitted under **U.S. v. Leon**, **468 U.S. 897 (1984).**  His objections focus on the issues addressed *supra* with regard to particularity and reliability.

In **Leon**, the Court recognized an exception to the rule suppressing evidence seized in violation of the Fourth Amendment "when an officer acting with objective good faith has obtained a search warrant from a judge of magistrate and acted within its scope." *Id.* **at 920.**  The Court set out four circumstances where suppression continued to be appropriate.  One is where "the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." Another is where the warrant is "so facially deficient -- *i.e.*, in failing to particularize the place to be searched or the things to be seized -- that the executing officers cannot reasonably presume it to be valid." *Id.* **at 923.**

-13-

Rector contends that both these circumstances existed in his case.  As already explained, the Court disagrees, and this objection will be overruled.

8.   Rector objects to the R&R's report that his ineffective assistance of counsel claim relating to speedy trial issues must fail because it involves claims that were raised and decided on direct appeal.  He contends that both trial and appellate counsel failed to properly raise and argue the issues, and were, therefore, ineffective. Implied in this argument is the contention that if his attorneys had made the correct arguments, his case would have been dismissed with prejudice for violation of the Speedy Trial Act.

In **Evitts v. Lucey**, **469 U.S. 387 (1985)**, the Supreme Court recognized the right of a criminal defendant to effective assistance of counsel on direct appeal.  In **Davis v. U.S.**, **673 F.3d 849 (8th Cir. 2012)**, the court noted that claims decided on direct appeal cannot be relitigated in a §2255 motion, but that ineffective assistance of counsel claims related to decided claims can be asserted.  Based on this precedent, the Court will review Rector's contentions as they relate to the Speedy Trial Act.

Rector contends that his lawyers failed to argue the correct starting date for counting days under the Speedy Trial Act; that some time was excluded that should have been counted; that the exclusions were for an excessive number of days; and that he was

-14-

subject to violations of both **18 U.S.C. § 3161** and **§ 3164**.

(a) Rector contends that the speedy trial clock started on March 5, 2008, rather than on March 14, 2008, as the Court of Appeals held. Rector fails, however, to offer any indication about what arguments his counsel on appeal made as far as the starting date for counting time under the Speedy Trial Act on appeal. As a result, the Court is unable to determine whether those arguments were incorrect.

Moreover, it would not matter if the counting of time had started on March 5 rather than March 14. Rector's trial commenced on August 27, 2008, 176 days after March 5, 2008. The following periods of time between March 5 and August 27 were legitimately excluded based on Rector's own motions to continue and time spent by the Court considering his plea agreement:

* 37 days for the first continuance (document #21);

* 35 days for the second continuance (document #22);

* 23 days for consideration of the second plea agreement; and

* 34 days for the third continuance (document #24).

Excluding these 129 days, only 47 days of the speedy trial clock had expired before Rector was tried, even without counting other periods legitimately excluded. The Speedy Trial Act calls for trial within 70 days. It was not violated, even if time is counted from March 5, 2008, as Rector contends.

-15-

(b)  Rector claims that a motion filed on April 10, 2008, was filed without his knowledge, and requested a delay that was not necessary and should not have been granted.  This objection is without merit.  Rector's lawyer was his agent, **Martinez v. Ryan**, **132 S.Ct. 1309, 1316 (2012),** capable of acting on Rector's behalf even without his knowledge.  The fact that Rector's attorney requested a continuance that Rector might not have considered necessary does not amount to a violation of the Speedy Trial Act.

Moreover, as found by the Court in its Order granting the motion, the continuance served the ends of justice "because otherwise the defendant's counsel would be denied the reasonable time necessary for effective preparation."  Thus, it cannot fairly be said that it was ineffective assistance to request the continuance.

(c)  Rector contends that the speedy trial clock should not have been stopped when he changed attorneys, or at least not for the length of time that was excluded.  He contends that because the motion for a new attorney was granted on the day it was made, no more than ten days should have been excluded.  This objection is without merit, as it ignores the need to allow a new attorney time to prepare for trial.

(d)  Rector contends that some of the excluded time periods were for over 30 days.  This objection is without merit, as the 30-day limit defines the reasonable length of time a proceeding

-16-

concerning a defendant may be held under advisement by a court. **18 U.S.C. § 3161(h)(1)(H).** Rector points to no such delays in this case.

(e) Rector also contends that the Speedy Trial Act was violated, in respect of **18 U.S.C. § 3164**, because he was denied bail and detained pending trial. **Section 3164** establishes a "custody clock" of ninety days for pre-trial detainees who have been denied bail. This objection is without merit for two reasons. First, the time exclusions of **§ 3161(h)** apply to computations under **§ 3164**, and when those exclusion are figured in, less than ninety days elapsed from Rector's arrest on February 9, 2008, and his trial. Second, the relief afforded for a violation of **§ 3164** is "automatic review by the court of the conditions of release," a form of relief that is moot in Rector's case.

(f) Finally, Rector contends that ineffective assistance of counsel led him to sustain a Sixth Amendment violation. The Eighth Circuit has explained that

> [t]he Sixth Amendment right to a speedy trial attaches at the time of arrest or indictment, whichever comes first, and continues until the trial commences. When evaluating a Sixth Amendment claim for pretrial delay, we perform a four factor balancing test, considering: [l]ength of delay, the reason for the delay, the defendant's assertion of his [speedy trial] right, and prejudice to the defendant.

**U.S. v. Williams**, **557 F.3d 943, 948 (8th Cir. 2009)** (internal

-17-

citations and quotation marks omitted).

On balance, these factors weigh against Rector. He was arrested on February 9, 2008, and his case went to trial on August 27, 2008. This is less than the one-year period that is considered "presumptively prejudicial," and thus does not even trigger Sixth Amendment analysis. **Doggett v. U.S.**, **505 U.S. 647, 651-52 (1992).**

If analysis were triggered, Rector's Sixth Amendment argument would still fail. All delays in the proceedings were at the request of and for the benefit of Rector, and he makes no showing of prejudice, alluding only to the fact that "inordinate delay" is "likely" to cause prejudice.

(g)  For the foregoing reasons, the Court finds no basis to conclude that Rector sustained either a Speedy Trial Act violation or a Sixth Amendment violation. That being the case, it is impossible that he suffered from ineffective assistance of counsel causing such violations. Rector's objections on this basis are without merit and will be overruled.

9.  Rector next objects to the R&R's report that there was no ineffective assistance of counsel by reason of his attorney's failure to request a pre-trial hearing to determine the voluntariness of certain statements he made during the search of his residence. The R&R reported that the statements in question were voluntary, not made in response to interrogation, and not

-18-

made while Rector was in custody.

Rector objects that all questioning should have ceased when he attempted to contact his attorney and invoked his <u>Miranda</u> rights.

This objection is without merit. <u>Miranda</u> is only triggered when a suspect is interrogated while in custody. **<u>J.D.B. v. North Carolina</u>, 131 S.Ct. 2394, 2402 (2011)**. Rector's own submissions indicate that the statements in question were not the result of interrogation. His assertion that "some comments inadvertently slipped out" undermines any such notion.

Moreover, Rector does not deny that he was told he could leave at any time during the search, and that he in fact did leave before the search was completed. While Rector states that he "felt 'in custody' regardless of what the agents may have said," his subjective feelings are irrelevant to the objective inquiry. *Id.*

For the foregoing reasons, there was no basis for Rector's attorney to request a hearing on the subject of statements made during the search, and thus no ineffective assistance of counsel in failing to make such a request. This objection is without merit, and will be denied.

10. Rector next contends that his attorneys rendered ineffective assistance of counsel when they failed to object to "numerous" alleged violations of **F.R.Cr.P. 11(c)(1)** by the Court.

This Rule prohibits the Court from participating in plea discussions. Rector assigns this as an objection to grounds 6, 7, 8, 19, 20, 21, 24, and 26 in his Petition.[1]

The Court finds no merit to this objection in relation to any of the grounds listed.

Rector complains that the Court referred to the first plea agreement as "quite a deal" and "one fine job," and that "[t]he Trial Judge was present and involved in plea discussions," citing pages 11-15 and 194-210 of the transcript on appeal (document #56). He contends that **Rule 11(c)** establishes a "bright line rule," a violation of which is "all that is necessary to prove bias."

This objection is without merit. Shortly after Rector filed his objections, the Supreme Court considered similar arguments in **U.S. v. Davila**, 133 S.Ct. 2139 (2013). Far from establishing a bright line rule, the Court there held that **Rule 52** applies to **Rule 11(c)** objections, requiring harmless error review of a timely **Rule 11(c)** objection, and plain error review of an untimely one.

---

[1] Grounds 6 and 7 relate to Rector's claim that his attorney was ineffective in failing to properly advise him not to waive a jury.
   Ground 8 is Rector's contention that his counsel was ineffective in failing to move for recusal based on comments the Court made about "gamesmanship."
   Ground 19 is that the Court should have recused *sua sponte* for "bias, lack of impartiality, and improper involvement in plea discussions."
   Grounds 20 and 21 assert ineffective assistance of counsel in failing to make proper objections and being "cowed" by the Court in connection with an objection.
   Ground 24 relates to alleged ineffectiveness in failing to object to portions of the Presentence Investigation Report.
   Ground 26 is Rector's request that the Court recuse from consideration of the pending § 2255 Petition.

In Rector's case, no timely **11(c)** objection was lodged. However, since Rector contends his attorney was ineffective for failing to make objections on this issue, the Court will examine the objections that Rector contends should have been made through the lens of harmless error review.

Rector's first objection -- to the Court's comments about the first plea agreement -- is without merit. **Rule 11(c)(1)** provides that the parties "may discuss and reach a plea agreement," and that "[t]he court must not participate in these discussions." It is clear that what is enjoined is court participation in the discussions leading up to the plea agreement. With regard to Rector's first objection, the comments in question were made after a plea agreement had already been reached, not as part of the discussions leading up to it. Thus, there was no violation of **Rule 11(c)(1)**. Moreover, the Court did not exhort Rector to enter a plea in connection with that plea agreement, as happened in **Davila**, merely commenting that the plea looked like a good deal. Since Rector did not enter a plea, it can hardly be said that these comments led to error.

Rector's contention about the Court's supposed "involvement" in plea discussions is also without merit. Pages 11-15 of the transcript on appeal are a portion of a conference call held to consider whether to grant a defense motion to continue. In the course of that hearing, government counsel alluded to the

possibility of new charges if forensic examination of Rector's computer revealed evidence of production of child pornography, and that the attorneys planned to meet to "have some plea negotiations." She pointed out that the standard plea agreement in use by her office included a provision waiving "further federal prosecution on similar or the same charges," and that she could not "make those kind of promises because there are these encrypted files."

The Court then asked:

Are you suggesting then that if they make some sort of
a deal now that somehow they can head off some of this
additional relevant conduct that could up the sentence?
Is that what you're talking about?

Counsel for the government acknowledged:

Well, I would think one of the things that a defendant
in this position would want to accomplish is precluding
any further prosecution along these lines. I just am
telling the Court that's one of the issues that's going
to be addressed in some plea negotiations.

At this point the Court ended discussion of the topic.

Pages 194-210 are the record of a bench conference that occurred in the midst of trial, after Rector's attorney announced that Rector wished to halt the trial and change his plea to guilty. The Court explored with the parties the fact that there was no plea agreement under consideration; noted that under **Rule 11(c)** it could not be involved in discussions of plea agreements; and afforded the parties an opportunity to engage in plea discussions privately.

-22-

Before removing himself from the discussions, the Court said to Rector:

> So what we know is, if you are, in fact, guilty and did the conduct that constitutes the offense, and you realize it can be proven -- and I'm not saying you do, but if you do, if you're guilty of it and you understand what could happen, that's about as far -- that's about the best you're going to get unless you make a deal with them where they're going to recommend a lesser punishment.  And even if you do -- if they recommend it, I'm not bound by that.  I have to fix what I think is the appropriate sentence when it comes time to fix sentence.

Following an opportunity to discuss the matter outside the presence of the court, Rector and his attorney announced that they desired to resume the trial.

The foregoing statements by the Court do not amount to participation in plea discussions.  **Rule 11(c)** does not require the Court to be ignorant of the fact that plea negotiations may be taking place, or to refuse to allow the parties time to conduct them (even in the middle of trial), or to refrain from mentioning them.  This is particularly so in a case like the one at bar, where the Court was twice informed that Rector had decided to enter a plea, and then changed his mind.  *See* **U.S. v. Rector**, *supra*, **598 F.3d at 469-71**, chronicling the procedural history of the case.

Moreover, the Court did not attempt to shape a plea agreement or encourage any party to offer a plea, to accept a plea, or to agree to concessions in return for a plea.  It did not evaluate

the merits of a plea agreement, or in any other way "participate" in plea discussions.  Its comments and inquiries were a part of the normal workings of the Court in handling a criminal case.  Nor did Rector enter a plea.  Thus, to the extent the Court did anything that could be considered "participation" in plea negotiations, such was undoubtedly harmless error.

For the foregoing reasons, the Court finds that there were no **Rule 11(c)** violations. It cannot, therefore, have been ineffective assistance of counsel for Rector's attorneys not to object to any **Rule 11(c)** violations.  This objection is without merit and will be overruled.

11.  Rector next objects to the R&R's recommendations with regard to ground 9, in which he contends that his attorneys were ineffective in failing to object that the charges against him were "multiplicitous and/or violate the Double Jeopardy Clause."  He contends that possession is a lesser included offense of receiving, and that it is multiplicitous to charge him with four separate counts of receiving child pornography, "especially so in light of the fact that all of the contraband was found on only one device."

Rector's double jeopardy argument is without merit.  Double jeopardy occurs when a defendant is convicted of "'two offenses that are in law and fact the same'." **U.S. v. Heuther**, 673 F.3d 789, 798 (8th cir. 2012), quoting **U.S. v. Mulenbruch**, 634 F.3d

-24-

987, 1002 (8th Cir. 2011). A possession offense under **§ 2252(a)(4)(B)** is a lesser included offense to a receipt offense under **§ 2252(a)(2)** -- but only if they are based on the same facts. *Id.* That was not the case here.

Count One of the Indictment charges Rector with possession of a computer containing one or more visual depictions of a minor engaging in sexually explicit conduct -- including an image labeled *1188784092351.jpg* -- in violation of **18 U.S.C. § 2252(a)(4)(B)** and **(b)(2)**.

Count Two charges Rector with knowingly distributing a visual depiction of a minor engaging in sexually explicit conduct, specifically a video entitled "*cbaby,*" in violation of **18 U.S.C. § 2252(a)(2)** and **(b)(1)**.

Counts Three, Four, Five and Six charge Rector with knowingly receiving -- on four separate dates -- visual depictions of a minor engaging in sexually explicit conduct, in violation of **18 U.S.C. § 2252(a)(2)** and **(b)(1)**. The images in question were identified as *27591.jpg* (Count Three)*, 1170989290863.jpg* (Count Four)*, 1182001273084.jpg* (Count Five), and *1183492090937.jpg* (Count Six).

It can be seen that the possession charge was based on one illegal image, while the receipt charges were based on four different images, none of them the image in Count One. Thus, the possession and receipt offenses were not based on the same facts,

-25-

and there is no double jeopardy.

Rector's "multiplicitous" argument fails for the same reason. "An indictment is multiplicitous if it charges the same crime in two counts." **U.S. v. Chipps, 410 F.3d 438, 447 (8th Cir. 2005)**. The crimes charged in Counts One and Counts Three through Six involve different images, and therefore are not the same crimes. It was not, therefore, ineffective assistance of counsel to fail to assert double jeopardy or multiplicity of charges. This objection is without merit, and will be overruled.

12. Rector next objects to the R&R's report that he failed to show ineffective assistance of counsel with regard to the use of expert witnesses, because he did not identify any expert witness or show how such witness would have affected the outcome of his trial. Rector directs the Court to page 53 of his Reply brief (document #86), wherein he says "it is clearly spelled out that a handwriting expert, had one been called to testify, would be able to ascertain the handwriting on the discs in question was not that of the Defendant, and therefore came from someone else."

The information on page 53 of the Reply brief demonstrates that Rector's argument is based entirely on speculation. He there says that his attorneys "failed to obtain expert testimony," and that "[f]ailure to even attempt to obtain this testimony or to investigate the possibility of obtaining an expert under § 3006A, clearly demonstrates ineffectiveness." From this it is clear that

-26-

Rector has no basis for his contention about how a handwriting expert might have testified.

Moreover, even if a handwriting expert had been obtained, and had testified that the labels on the discs were not in Rector's handwriting, such testimony would not necessarily -- or even probably -- have exonerated Rector. The informant testified that on visits to Rector's home he watched as Rector copied portions of his child pornography collection onto the discs, and that Rector then gave him the discs.  There was no evidence to refute this testimony, and testimony that it was not Rector's handwriting on the discs would not have refuted it.

Speculation about how a witness might have testified, and how the trier of fact might have reacted to that testimony, will not meet Rector's burden to prove that his attorneys were ineffective. **Sanders v. Trickey**, 875 F.2d 205, 210-11 (8th Cir. 1989), ***cert. denied,*** 493 U.S. 898 (1989).  This objection is without merit, and will be overruled.

13.  Rector objects to the R&R's report that there was no ineffective assistance of counsel when his attorney "opened the door" to information gained during plea negotiations, reasoning that the ensuing plea agreement was not binding on him until it was accepted by the Court.  Rector also contends that had his attorneys "properly objected at the critical times," the evidence would not have been received.

The evidence in question is certain illegal images contained in encrypted files on Rector's computer, which were obtained when Rector revealed the encryption password as part of what he agreed to do in the first plea agreement.  After revealing the password, and before entering a plea in conjunction with that plea agreement, Rector backed out of the plea agreement.

Rector's objections on this point are without merit.  In **U.S. v. Washburn**, **--- F.3d ---, 2013 WL 4516646 *5 (8th Cir. 2013)**, the Court considered a similar situation, and held that the plea agreement there in question "was binding at the time Washburn added his initials and signature." Likewise, in the instant case, the Court finds that Rector's plea agreement was binding on him when he signed it.

Moreover, even if Rector had not been contractually bound to do so, after signing the plea agreement he delivered the password to the government as agreed in that document.  The government did not breach the plea agreement, and thus obtained the password and the images fairly, not by taking unfair advantage of Rector.

Finally, the evidence at trial was that Rector agreed to give investigators the encryption password in hopes of leniency at sentencing.  It is within the range of reasonable representation for his attorney to have brought his cooperation on this point to the attention of the Court.

For these reasons, the Court declines to finds ineffective

assistance of counsel based on the question asked by Rector's counsel concerning how the images were obtained, or on his alleged failing to "properly object[] at the critical times," as urged by Rector.  These objections are without merit and will be overruled.

14.  Rector objects to the R&R's conclusion that he failed to demonstrate ineffective assistance of counsel by virtue of how his attorney cross-examined government witnesses.  He contends that the R&R used the wrong standard, requiring that he "prove he was prejudiced" by his attorney's performance.

This objection is without merit and will be overruled.  In **Strickland v. Washington, 466 U.S. 668, 692 (1984),** the Court said "any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution."  Except where ineffectiveness is said to result from a conflict of interest, "actual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice."  *Id.* at **693.**

15.  Rector also objects to the R&R's conclusion that he failed to prove ineffective assistance by his attorney in various specific respects.  He contends that his attorney "did nothing," reasoning that he must, therefore, have been ineffective.  In support of this contention he cites to page 308 of the transcript on appeal, indicating that his attorney rested without calling any

witnesses.

A review of the transcript belies Rector's assertion that his attorney "did nothing."  He invoked the rule of sequestration at the start of trial; had witnesses available at the start of trial; made appropriate objections as testimony progressed; attempted to negotiate a plea mid-trial when he realized how badly things were going; released two of his four witnesses with the approval of Rector during the presentation of the government's case; cross-examined certain government witnesses; and made a brief closing argument.

While Rector's attorney did not prevail at trial, that is not necessarily evidence of ineffectiveness.  The evidence against Rector was overwhelming, as the Court stated several times in announcing its decision.  Rector has shown nothing his attorney could have done, no witness he could have called, no questions he could have asked on cross-examination, nothing that Rector could have testified to had he taken the stand, that would have altered the outcome of the trial.  For all these reasons, this objection is without merit, and will be overruled.

16.  Rector next objects to the R&R's finding that Rector's attorneys were not ineffective in failing to move for dismissal of Count Two of the Indictment.  He mentions his attorney's failure to impeach the informant and failure to obtain a handwriting expert.  He also contends that there was no evidence of a nexus

with interstate commerce.

The Court has already addressed the speculative nature of the "handwriting expert" contention, and found it without merit. The claim of failure to impeach the informant is likewise without merit. Counsel for the government presented all the typical impeachment evidence in her direct examination of the informant. Rector's counsel did what could be done with that evidence in closing, arguing that the informant had been in Rector's house on several occasions and thus had opportunity to download child pornography, and had motive to do so, *i.e.,* to help himself in his own criminal litigation. The evidence, however, weighed so heavily against Rector that a motion to dismiss would have been denied, and it cannot have been ineffective assistance of counsel to fail to make it.

Rector's interstate commerce contentions are likewise without merit. It was uncontested that on the dates the charged images and video were downloaded to Rector's computer, he had internet service in Arkansas through Cox Communications, and the only way he could use the internet to download the images was by his computer communicating with servers and routers located in states other than Arkansas. It was also uncontested that the children portrayed in those images and the video were identified victims and all are known to be residents of states other than Arkansas.

The cases cited by Rector are inapposite. Only one was

decided after the internet -- with its concomitant expansion of Commerce Clause jurisprudence -- came into existence, and Rector misreads that one. **U.S. v. Lopez**, **514 U.S. 549 (1995)** involved a challenge to the Gun-Free School Zones Act of 1990, which succeeded because the statute in question required no showing of an interstate nexus and thus its enactment was not authorized under the Commerce Clause.[2]

For the foregoing reasons, these objections are without merit, and will be overruled.

17.  Rector also objects to the conclusion in the R&R that the statutes under which he was convicted were constitutional.  He contends that **18 U.S.C. § 2252** is unconstitutional because it (a) interferes with powers reserved to the states under the Tenth Amendment; (b) is void for vagueness; and (c) is not authorized by the Commerce Clause.

The R&R relied on **U.S. v. Betcher**, **534 F.3d 820 (8th Cir. 2008)**_, cert. denied,_ **129 S.Ct. 962 (2009)** and **U.S. v. Bausch**, **140 F.3d 739 (8th Cir. 1998)**_, cert. denied_, **525 U.S. 1072 (1999)** in concluding that **§ 2252** is constitutional.  The reasoning of **Betcher** and **Bausch** answer Rector's Commerce Clause arguments, and are binding precedent on this Court.

---

[2] Rector misreads **Lopez**, contending it "renders firearm possession not affecting interstate commerce or economics, even though the gun had traveled in interstate commerce at one time."  The problem with the statute under consideration in Lopez was that it contained no requirement that possession of the firearm be connected in any way to interstate commerce.  The statutes under which Rector was convicted do contain such a requirement.

Because the statute is a valid exercise of Commerce Clause jurisdiction, it is also valid under the Tenth Amendment.  As long as "it is acting within the powers granted to it under the Constitution, Congress may impose its will on the States.  Congress may legislate in areas traditionally regulated by the States." **Gregory v. Ashcroft**, 501 U.S. 452, 460 (1991).

Rector's "void for vagueness" challenge appears to be a contention that **§ 2252** allows standardless discretion in charging decisions.

"A conviction fails to comport with due process if the statute under which it is obtained . . . . is so standardless that it authorizes or encourages seriously discriminatory enforcement." **U.S. v. Williams**, **553 U.S. 285, 304 (2008)**.  Rector's arguments on this issue do not demonstrate discriminatory enforcement, however.  They appear to be based on what he perceives to be sentencing disparities, and fail to take into account the multitude of factors that the United States Sentencing Guidelines call for in determining sentences.  Rector presents no convincing argument that the law is void for vagueness.

Because none of Rector's constitutional challenges to **§ 2252** has merit, it was not ineffective assistance of counsel for Rector's attorney to fail to assert them.  These objections to the R&R are without merit, and will be overruled.

18.  Rector next objects to the R&R's report that he failed

to show his attorneys were deficient in failing to object to the Presentence Investigation Report ("PSIR").  He contends that he "has identified at least some of the paragraphs that should have received objections" and that he "has shown how the outcome would have been different if only a small number of objections had been sustained."  (Emphasis in original.)

This objection is without merit.  The transcript of the sentencing hearing reflects that the Court inquired not only of Rector's attorney, but of Rector himself, in open court about the withdrawal of various objections to the PSIR.  Rector agreed that he was content with asserting only two of the objections previously lodged, identified as one sentence in ¶22 and all of ¶36 of the PSIR. The Court advised Rector that if there were other objections, "I'll need to address it right now," and Rector responded, "No that's it, Your Honor."

Rector must show that his attorney's conduct fell outside "the wise range of reasonable professional assistance," **Strickland***, id.,* **466 U.S. at 689**, but the evidence shows that his attorney was carrying out his specific wishes with regard to the objections asserted at sentencing.  This objection is, therefore, without merit, and will be overruled.

19.  Rector objects to the R&R's report that he failed to show that his attorney was ineffective based on his inexperience. This objection is nothing more than a repetition of Rector's

assertion that his attorney was ineffective because he "did nothing," and lacks merit.  It will be overruled.

20.  Rector objects to the R&R's report that the Court did not show impermissible bias against him and in favor of the prosecution at trial and at sentencing.  Rector contends that this finding is "unreasonable" and "unrealistic," but fails to show in what way it is either.

He also contends that the R&R fails to address the issue of Rule 11 violations, but this is not correct, as his position on Rule 11 is addressed elsewhere and rejected.

Finally, he contends that this ground "should stand alone instead of being combined with the next two grounds."  He offers no support for this proposition, and it is rejected.

For these reasons, this objection is without merit and will be overruled.

21.  Rector contends that bias was shown towards his attorney in a fashion "akin to some kind of hazing rite, where the neophyte/initiate gets roughed up in order to be sure he knows his place in the pecking order."  He offers no citation to the transcript that would support this assertion, and the Court -- having reviewed the entire transcript -- finds none.  This objection is without merit and will be overruled.

22.  Rector objects to the R&R's finding that he cannot show his attorneys were ineffective for failing to object to the

number of charges brought against him, as compared to the charges against the informant.  He contends that there is evidence in his Reply Brief to support this objection.

The differences between Rector and the informant set out in the Reply Brief are that the informant had two prior convictions for offenses against children while Rector had none, and that the informant's cache of pornography was contained "in at least _five_ different items" whereas his was "all . . .contained in _one_ item." (Emphasis in original.)

The first of these differences relates not to the charging decision, but to sentencing factors, and is, therefore, immaterial to this objection.  The second is equally immaterial.  While Rector may have had all his contraband on one computer, that computer contained over 194,000 images of child pornography, over 2,000 videos of child pornography, and evidence not only of receipt but also of production of child pornography.

Under the circumstances, it cannot reasonably be argued that the government was unjustified is charging Rector with six offenses.  Thus, Rector's attorneys were not ineffective in failing to object to the number of charges brought against him. This objection is without merit and will be overruled.

23.  Rector also objects to the R&R's report that he has failed to show that his attorney on appeal was ineffective.  Most of this objection is nothing more than repeated assertions that

-36-

all of his attorneys were ineffective.  Rector does, however, specifically complain that appeal counsel asked him what issues he thought should be appealed, then failed to assert all of them.

This objection is without merit.  "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." **Jones v. Barnes**, **463 U.S. 745, 751-52 (1983)**.

In **Jones** the Court cited its own Justice Jackson as follows:

> "One of the first tests of a discriminating advocate is to select the question, or questions, that he will present orally.  Legal contentions, like the currency, depreciate through over-issue.  The mind of an appellate judge is habitually receptive to the suggestion that a lower court committed an error.  But receptiveness declines as the number of assigned errors increases. Multiplicity hints at lack of confidence in any one. . . . [E]xperience on the bench convinces me that multiplying assignments of error will dilute and weaken a good case and will not save a bad one."

*Id.*

Absent evidence to the contrary, it is assumed that the failure to raise a claim on appeal was sound appellate strategy. **Roe v. Delo**, **160 F.3d 416, 418 (8th Cir. 1998)**.  Rector has not shown that any meritorious issues were omitted from his appeal. This objection is without merit, and will be overruled.

24.  Rector next objects to the R&R's findings concerning Ground 24.  The centerpiece of this objection is the transcript of a telephone conference regarding Rector's request for a

continuance of 60 days, in which the Court said to the prosecutor, "And, Kyra, you say you don't object to at least 30 days?"

Because the prosecutor had not stated her position on the continuance up to that point in the telephone conference, Rector contends the "obvious conclusion" from this inquiry is that "the Court and prosecutor have discussed and collaborated, before the conference call, what will be permitted regarding the motion." On this basis, Rector accuses the Court and the government of "working hand in hand to the detriment of the defense," violating "how many rules, canons, oaths, etc., the Petitioner can only imagine."

In fact, it is only Rector's overactive imagination that is working here. The record reflects that on the day of the telephone conference the government filed a written response to Rector's motion to continue, stating that it did not object to the defense request for a continuance, and that review of evidence "would take defense counsel and a defense expert, if any, at least another thirty or more days to review." (Document #20.) The Court properly read the written submissions of the parties before the conference, and thus knew of the government's position.

Rector's contention that the Court failed to record a pre-sentencing hearing because "when a malicious action is about to occur, no record is made (or the record is 'lost' or 'inadvertently destroyed')" is demonstrably without merit.

-38-

Consider this argument in light of his position with respect to the continuance hearing: Rector fails to explain the existence of a record of the continuance hearing in the face of his argument about how "ominous" that hearing was.

This objection is without merit, and will be overruled.

25.  Rector objects to the R&R's report that cumulative errors will not support a §2255 petition.  He suggests that the Court adopt the reasoning of Judge Bennett in **Johnson v. U.S.**, **860 F.Supp.2d 663 (N.D. Iowa, 2012)**.

The Court finds no merit in this contention.  Judge Bennett considered whether errors of counsel could be "considered cumulatively or in the aggregate to determine whether the petitioner was sufficiently prejudiced" to obtain habeas relief. He recognized that "the Eighth Circuit Court of Appeals has expressly foreclosed this variant of cumulative error review. . . . This is the controlling rule in this Circuit, and I will adhere to it."  Judge Bennett went on to state that "my determinations of whether or not Johnson is entitled to relief stand or fall claim-by-claim, not on the basis of the cumulative prejudice from multiple deficiencies."  *Id.* **at 752**.

What Judge Bennett actually did in **Johnson** was to "group" several ineffective assistance of counsel claims as "facets" of one over-arching claim.  But even if the Court approached Rector's claims in that fashion, it has not found any deficiencies in the

performance rendered by Rector's attorneys.  The end result would, therefore, be the same: denial of relief.  This objection is, therefore, without merit, and will be denied.

26.  There being no merit to any of Rector's objections to the R&R, the Court finds that it should be adopted in toto, Rector's objections overruled, and the Petition dismissed with prejudice.

**IT IS THEREFORE ORDERED** that defendant's **Objections To United States Magistrate Judge's Report And Recommendation** (document #97) are **overruled.**

**IT IS FURTHER ORDERED** that the **Magistrate Judge's Report And Recommendation** (document #95) is **adopted in toto.**

**IT IS FURTHER ORDERED** that defendant's **Amended Motion Under 28 U.S.C. § 2255** (document #75) is **dismissed with prejudice.**

**IT IS SO ORDERED.**

 /s/ Jimm Larry Hendren
**JIMM LARRY HENDREN**
**UNITED STATES DISTRICT JUDGE**